Alvin DILLINGER, Appellant,

v.

CATERPILLAR, INC., a Delaware Corporation; Wheeler Machinery Company, Inc., a Utah Corporation.

No. 91–3308.

United States Court of Appeals,
Third Circuit.

Argued Dec. 12, 1991.

Decided Feb. 25, 1992.

Rehearing Denied April 1, 1992.

Bruce J. Phillips (argued), Gilardi & Cooper, Pittsburgh, Pa., for appellant.

Robert S. Grigsby (argued), Curt Vazquez, Cohen & Grigsby, Pittsburgh, Pa., for appellees.

Before: BECKER, GREENBERG, and ALITO, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Appellant, Alvin Dillinger ("Dillinger"), a former truck driver, commenced this strict products liability proceeding against appellee, Caterpillar, Inc., in the Court of Common Pleas, Allegheny County, Pennsylvania, for injuries he suffered while driving a large construction vehicle manufactured by Caterpillar.[1] Caterpillar removed the action to the United States District Court for the Western District of Pennsylvania on March 14, 1990, based on diversity of citizenship and the requisite jurisdictional amount. After a six-day trial, the jury found in favor of Caterpillar, by its negative answer to a special interrogatory asking whether Dillinger proved by a preponderance of the evidence that the truck "was defective, that it was defective when it left the defendant's control, and that the defect was a substantial factor in bringing about some injuries to plaintiff."[2]

Dillinger's appeal embodies two fundamental assertions. First, he contends that the district court should not have admitted evidence that he was not wearing a seat belt at the time of the accident, even for the limited purpose of reducing his damages. Second, Dillinger argues that the court should not have permitted Caterpillar to argue that his own conduct caused his injuries because such evidence in this case is tantamount to contributory negligence inadmissible under Pennsylvania law in a products liability case. We agree with Dillinger's assertions, and we will reverse the judgment of the district court and remand for a new trial.

## I.

### BACKGROUND

From August, 1987 until February 16, 1988, Dillinger worked as a driver of a Caterpillar 773 ("the 773"), a 50–ton–capacity dumpster, for S.J. Groves & Son at the site of the Midfield Terminal at the Pittsburgh Airport. Dillinger reported for his ten-hour shift between 5 p.m. and 6 p.m. on February 15, 1988, and drove the 773 without incident until 4:00 a.m. At that time, Dillinger was proceeding fully loaded up a haul road with a grade of 7%.[3] When he had driven the truck about three-quarters of the way up the hill toward the dumping area, the transmission failed and stopped pulling the truck and, as a result, the engine stalled.

When the engine stalled the power steering stopped working and the truck began to roll down the hill. Accordingly, Dillinger applied the foot brake but, because he had disengaged the front brake due to wintery conditions, he depended upon the rear brake alone to halt the truck.[4]

Dillinger thought the foot pedal was functioning normally when he depressed it because he could feel air in the brake but the truck nevertheless continued to roll down the hill.[5] Accordingly, Dillinger con-

---

1. Wheeler Machinery Company, Inc. was also a defendant but it was dismissed by a stipulation which was confirmed by the district court.

2. As will appear from our opinion, it may well be that if this interrogatory had been subdivided the problem we identify requiring a reversal might have been avoided.

3. The 773 weighs 182,000 pounds when it is fully loaded.

4. Dillinger's brief asserts that it is proper to disengage the front brake during wintery conditions, and the expert witnesses at trial agreed.

Although Dillinger testified that on the day of the accident conditions were "generally good," he also stated that it had snowed during the night and that there were icy spots on the road.

5. Dillinger's brief explains that "[t]he brakes are air over hydraulic fluid. When you depress the foot pedal you have resistance from the air which goes to a roto chamber. The roto chamber forces fluid through a rubber hose to the rear brakes."

tinued to apply the brake pedal, as he believed the truck was sliding due to road conditions and not brake failure. As he applied the brake, he continued to feel air pressure and none of the truck's systems indicating a loss of air in the brakes were activated. Yet the brake did not stop the truck.

As the truck continued to roll backwards, Dillinger could not see anything to the rear because it was dark and there was no lighting in the area. He contemplated jumping out of the truck, but decided that the cab, which was ten feet off the ground, was too high for a safe jump. He therefore clutched the steering wheel as the truck rolled backwards over a high embankment, cartwheeled and came to a rest on the passenger side at the bottom of the embankment. Dillinger was found outside the truck on his back, apparently having gone through the windshield. Dillinger was not wearing the available lap belt at the time of the accident and unfortunately he was severely injured.

Within hours of the accident, Dennis McHattie, Groves' general superintendent, took a video of the accident site and the truck. John Druggan, lead mechanic at Groves, also examined the truck just after the accident. At that time Druggan and John Robbins, a foreman on the job, saw a line of hydraulic fluid on the road leading up the hill. Later, the truck was towed to the repair area where Druggan's mechanics worked on it and where he observed that four of the hydraulic hoses on the truck had been damaged.

In addition to McHattie's and Druggan's investigation, two employees of Beckwith Machinery Company, the local Caterpillar dealer, examined the accident site and wrote a report summarizing their observations and conclusions. In the report, they indicated that the hydraulic lines of the truck appeared to have been damaged while the truck was proceeding up the hill and not as a result of the accident itself.[6]

Dillinger alleges that the 773 had a design defect which resulted in the accident. According to him, the loss of fluid from the hydraulic hoses, particularly the fourth hose that carries hydraulic fluid from the rear brake roto chamber to the rear brake, caused the brake failure. Dillinger asserts that the truck should have been designed adequately to safeguard the hoses and to alert the driver to a loss of hydraulic fluid in the event of hose damage.

Kai Baumann, Dillinger's expert, testified in support of Dillinger's assertion that the 773 was defective. After examining an exemplar truck with Druggan, Baumann concluded that the 773 either ran over a sharp object or some sharp object shot upward from one of the truck tires as the truck proceeded up the hill and damaged the four hoses. As a result, the hydraulic fluid stopped flowing to the rear brakes and to the transmission causing the brake and transmission failure. In Baumann's view, the truck should have been equipped with a "belly pan," similar to the pan on the underside of the truck engine, to protect the hoses. In addition, the truck should have had a visual or audible warning system to alert the truck driver that hydraulic fluid was not flowing to the brakes; the 773 was equipped with a similar system that alerts the driver to a loss of air in the brakes.[7] Finally, Baumann observed that the operator's manual did not inform the driver that, if the fluid in the hydraulic hoses ceased to flow properly, this would trigger an undetectable loss of brake power.

Caterpillar conceded that the 773 was not equipped with a system to alert the driver to a loss of hydraulic fluid and it does not contend in its brief that the hoses were not damaged and thus did not cause the loss of hydraulic fluid as Dillinger asserts. Furthermore, the experts unanimously agreed that the foot pedal would feel normal in the event of a loss of hydraulic fluid. However, Caterpillar contended that the truck

6. At trial, the court excised the employees' opinion from the report because it held that the opinion did not fall within the business records exception to the hearsay rule.

7. Baumann noted that many automobiles are equipped with a system that alerts the driver to loss of hydraulic fluid.

was not defectively designed and attacked Dillinger's experience and conduct in an effort to establish that his conduct, not a defect in the design of the 773, caused his injuries.

In support of these assertions, Caterpillar's experts testified that the truck was equipped with adequate brake safety systems as it had four alternative means of braking the truck supplementary to the primary rear brake operated by the foot pedal. First, the 773 was equipped with front brakes that Dillinger had disengaged because of the road conditions. Second, the truck had a hand-operated parking or emergency brake to the right of the driver's seat.[8] Third, the truck was equipped with a hand-operated "retarder" braking system. Fourth, the truck had an emergency brake which, when pulled, activates all the other braking systems. Caterpillar's experts asserted that, if Dillinger had applied any of these brakes, he would have prevented the truck from rolling backwards. The truck was also equipped with an emergency steering system which functions even if the engine is not running.[9]

Caterpillar's experts also stated that they believed that the hydraulic hose for the rear brake was adequately protected by the other hoses located between the hydraulic hose and the roadway. In their view, the front axle was effective in stopping large objects run over by the truck, and a belly pan would interfere with a mechanic's ability to check the hoses for leaks. They further contended that a warning system as suggested by Dillinger's expert would not be practical.

Finally, in support of Caterpillar's contention that Dillinger's conduct, and not a defect in the truck, caused his injuries, Caterpillar asserted that Dillinger was inexperienced in driving the 773, as he had driven that truck for only six months and had not read the operators manual;[10] Dillinger did not regularly test the emergency braking system; and Dillinger should have known that the truck was not sliding because the road was not icy and because the truck bumped along the surface of the crushed rock and dirt as it rolled backwards.

Ultimately the jury returned a verdict for Caterpillar, concluding either that the truck was not defective, or that any defect did not constitute a substantial factor in bringing about some of Dillinger's injuries. This appeal followed.

## II.

### ANALYSIS

#### A.  Seat Belt Defense

##### 1.  Standard of Review

■ The propriety of the district court's admission of evidence concerning Dillinger's non-use of the available seat belt to mitigate his damages is a question of Pennsylvania law.[11] Accordingly, our

---

8. Caterpillar's brief asserts that the parking brake would hold the 773 on a *minimum* grade of 15%, emphasizing "minimum," and its expert testified similarly. Thus, it appears that this brake would not have been effective as the incline here had a grade of 7%. However, we find the suggestion that a braking system is effective only at a minimum grade to be counter-intuitive and thus we believe that both the expert and Caterpillar in its brief may have meant "maximum," not "minimum." The distinction, however, is not material to our result.

9. In addition, a red decal stating "WARNING! USE EMERGENCY SYSTEM IF SERVICE BRAKES FAIL" was affixed to the dashboard.

10. Dillinger also testified in a deposition that nobody had taught him how to drive the 773 safely.

11. In this diversity of citizenship action under Pennsylvania law the parties have briefed the issue of the admissibility of the seat belt defense under Pennsylvania law and we decide the case on that basis by predicting how the Supreme Court of Pennsylvania would decide the case. While Caterpillar alternatively, and indeed primarily, urges that we consider the seat belt defense as governed by federal law, we reject that contention as the defense is substantive as it is intended to have legal consequences in itself and is not merely a matter of evidence of some other fact. Thus, if we decided the matter without regard for Pennsylvania law, in theory at least, we could reach a different result than would the Supreme Court of Pennsylvania, a consequence surely to be avoided in a diversity case. Of course, in determining to use Pennsylvania law we are being consistent with our approach as to the choice of law with *Vizzini v.*

review is plenary. *Compagnie des Bauxites de Guinee v. Insurance Co. of North America,* 724 F.2d 369, 371 (3d Cir.1983).

## 2. Evidence of Dillinger's Non-use of Seat Belt is Inadmissible in this Products Liability Action

The district court permitted Caterpillar to introduce evidence that Dillinger was not wearing a seat belt at the time of the accident, but the court confined the use of that evidence to the mitigation of his damages. Dillinger urges that this was error, as under Pennsylvania law, evidence concerning a plaintiff's non-use of a seat belt is inadmissible in a products liability proceeding for any reason. While we recognize that this evidence was harmless to Dillinger as it was not germane on liability, we nevertheless will consider this issue as we are ordering a new trial for another reason and the seat belt issue seems certain to arise again.

### a. Products Liability in Pennsylvania

In *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966), the Pennsylvania Supreme Court adopted section 402A of the Restatement (Second) of Torts as the law of Pennsylvania in products liability actions. That section imposes liability upon the seller of a defective product that causes injury to the user or consumer. Since that decision, the Pennsylvania Supreme Court has taken a consistent approach in strict liability actions and has refused to permit any evidence of negligence on the part of the plaintiff to be introduced to defeat a claim under this section.

*Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975), is illustrative.[12] In that case, after a pilot was killed in a helicopter accident, his wife brought a wrongful death action against the manufacturer of the helicopter based on strict products liability. Although the manufacturer prevailed in the trial court, the Superior Court reversed and the Supreme Court affirmed that reversal. In its opinion, the Supreme Court observed:

> The law of products liability developed in response to changing societal concerns over the relationship between the consumer and the seller of a product. The increasing complexity of the manufacturing and distributional process placed upon the injured plaintiff a nearly impossible burden of proving negligence where, for policy reasons, it was felt that a seller should be responsible for injuries caused by defects in his products.

*Id.* at 93, 337 A.2d at 898.

Further, the Court noted that the critical distinction between strict liability and negligence is that the existence of due care in strict liability cases is entirely irrelevant, both with respect to the consumer and the seller, in strict liability cases. Therefore though the trial court in *Berkebile* instructed the jury that it could consider the reasonableness of the decedent's actions in determining whether the helicopter was defective, the Supreme Court held that the instruction was error: "To charge the jury or permit argument concerning the reasonableness of a consumer's or seller's actions and knowledge, even if merely to define 'defective condition' undermines the policy

*Ford Motor Co.,* 569 F.2d 754 (3d Cir.1977), in which in a diversity of citizenship action we applied Pennsylvania law in considering a seat belt defense. *See also Potts v. Benjamin,* 882 F.2d 1320 (8th Cir.1989); *Kolbeck v. General Motors Corp.,* 745 F.Supp. 288, 293 (E.D.Pa. 1990). In deciding this case we must give due consideration to the decisional law of inferior state courts but we need not give those decisions binding effect. A decision of "an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone & Tel. Co.,* 311 U.S. 223,

237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). *Accord, Burke v. Maassen,* 904 F.2d 178, 182 (3d Cir.1990); *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). As it happens this principle is important here on the causation issue we discuss below as the Pennsylvania Supreme and Superior Courts seem not to be consistent in their results.

**12.** Although the reasoning in this case is cited as the law in Pennsylvania, only two justices adhered to the opinion while five other justices concurred in the result.

considerations that have led us to hold ... that the manufacturer is effectively the guaranter [sic] of his product's safety." *Id.* at 97, 337 A.2d at 900.

In *McCown v. International Harvester Co.,* 463 Pa. 13, 342 A.2d 381 (1975), the court further refined its view of the theoretical underpinnings of strict products liability actions. There, the plaintiff was injured while driving a truck manufactured by the defendant. According to the plaintiff, the design of the steering mechanism was defective and caused the accident which resulted in his injuries. For purposes of the appeal, the defendant conceded that the steering wheel was defectively designed, but argued that the plaintiff's contributory negligence should be considered either to reduce the plaintiff's permissible recovery or as a defense to liability.

The Supreme Court disagreed. It held that the defendant's first contention

> would create a system of comparative assessment of damages for 402A actions. Neither the General Assembly by statute nor this Court by case law has established such a scheme of comparative negligence in other areas of tort law. Without considering the relative merits of comparative negligence, we think it unwise to embrace the theory in the context of an appeal involving Section 402A.

*Id.* at 16, 342 A.2d at 382 (footnote omitted).

The court observed with regard to the defendant's second contention, that the "[a]doption of contributory negligence as a complete defense in 402A actions would defeat one theoretical basis for our acceptance of Section 402A.... The law should not require ... inspection or caution when it has accepted as reasonable the consumer's anticipation of safety. We reject contributory negligence as a defense to actions grounded in Section 402A." *Id.* (footnotes omitted).

Later, in *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 391 A.2d 1020 (1978), the Supreme Court imposed an even stricter standard of liability on the manufacturer when it held that the trial court had erred in instructing the jury that a defect in a product is one that is "unreasonably dangerous," a term expressly provided in Restatement (Second) of Torts § 402A. In the Supreme Court's view, "the term 'unreasonably dangerous' has no place in the instructions to a jury as to the question of 'defect' in this type of case" because it improperly introduces negligence concepts into the proceeding. 480 Pa. at 559, 391 A.2d at 1027. Instead, the court endorsed the instruction of its Committee for Proposed Standard Jury Instructions, Civil Instruction Subcommittee, which provided:

> The [supplier] of a product is the guarantor of its safety. The product must, therefore, be provided with every element necessary to make it safe for [its intended] use, and without any condition that makes it unsafe for [its intended] use. If you find that the product, at the time it left the defendant's control, lacked any element necessary to make it safe for [its intended] use or contained any condition that made it unsafe for [its intended] use, then the product was defective, and the defendant is liable for all harm caused by such defect.

*Id.* at 559, 391 A.2d at 1027 n. 12.[13]

In a similar vein, other courts have observed that the function of products liabili-

---

13. Many commentators have criticized this proposed instruction, urging that it "constitutes a radical departure from the growing consensus that cost-benefit analysis is the appropriate analytic method for determining the design defect issue in close cases." *McKay v. Sandmold Systems, Inc.,* 333 Pa.Super. 235, 239, 482 A.2d 260, 263 (1984) (quoting J. Henderson, *Renewed Judicial Controversy Over Defective Product Design: Toward the Preservation of an Emerging Consensus,* 63 Minn.L.Rev. 773, 801 (1979)). In *McKay,* the Superior Court stated that the jury instructions imposed by *Azzarello* will "render[ ]

[manufacturers] absolutely liable for the injuries sustained [by consumers].... Section 402A of the Restatement (Second) of Torts, however, has imposed strict liability upon a manufacturer for a defective product; it has not imposed absolute liability for all risks inherent in the use of a product." 333 Pa.Super. at 244, 482 A.2d at 265. However, the court was constrained to apply the *Azzarello* instructions and did so.

The Pennsylvania Supreme Court reaffirmed the force of *Azzarello* and the court's conviction

ty, at least under Pennsylvania law, is to shift the loss to the party who can most easily bear it. *Staymates v. ITT Holub Industries,* 364 Pa.Super. 37, 43–44, 527 A.2d 140, 143 (1987).

The Supreme Court's decisions protecting plaintiffs in strict products liability cases have been applied in the Superior Court as well, though as we shall demonstrate, not always faithfully. In *Staymates,* the Superior Court confirmed that the Supreme Court's decisions "provide[ ] a clear indication of the direction the Court was taking with respect to its product liability doctrine. At a minimum, the Court made apparent its firm belief that negligence concepts did not belong in product liability cases." 364 Pa.Super. at 44, 527 A.2d at 143. The court further held:

> We are quite aware that a number of states have taken the initiative, be it by judicial decision or legislative enactment, to apply comparative negligence principles to strict liability. However, in the absence of any indication from our Supreme Court that it is willing to alter its stance ... favoring a retention of the dichotomy between strict liability and comparative negligence in the area of products liability, we find it inauspicious at this time to follow suit....

364 Pa.Super. at 47, 527 A.2d at 145. *Accord, Harford Mutual Ins. Co. v. Moorhead,* 396 Pa.Super. 234, 248–50, 578 A.2d 492, 500 (1990) (plaintiff's negligence is inadmissible in strict liability proceeding), *allocatur denied,* 590 A.2d 757 (1991); *Remy v. Michael D's Carpet Outlets,* 391 Pa.Super. 436, 444–46, 571 A.2d 446, 451 (1990) (plaintiff's *comparative* negligence is inadmissible in products liability suit, despite passage of Pennsylvania Comparative Negligence Act), *allocatur granted,* 527 Pa. 634, 592 A.2d 1301 (1991); *Carrecter v. Colson Equipment Co.,* 346 Pa.Super. 95, 99–101, 499 A.2d 326, 329 (1985) (negligence concepts have no place in strict liability action).

The federal courts construing Pennsylvania law have similarly recognized the Pennsylvania Supreme Court's refusal to consider the plaintiff's negligence in products liability proceedings. *See, e.g., Holloway v. J.B. Systems, Ltd.,* 609 F.2d 1069, 1073 (3d Cir.1979) ("We read *Azzarello* as a signal that evidence and jury instructions regarding negligence concepts should be kept out of cases brought under § 402A.") (footnote omitted); *Conti v. Ford Motor Co.,* 578 F.Supp. 1429, 1434 (E.D.Pa.1983) ("The Pennsylvania Supreme Court, perhaps more than any other state appellate court in the nation, has been emphatic in divorcing negligence concepts from product-liability doctrine."), *rev'd on other grounds,* 743 F.2d 195 (3d Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 784 (1985).

### b. Seat Belt Cases

█ In light of the Pennsylvania Supreme Court's steadfast unwillingness to permit the introduction of evidence concerning a plaintiff's contributory negligence in a products liability proceeding, several courts, including this court, have held that evidence of a plaintiff's non-use of a seat belt is inadmissible in such an action.

*Vizzini v. Ford Motor Co.,* 569 F.2d 754 (3d Cir.1977), was our first opportunity to address the propriety of the introduction of evidence concerning plaintiff's non-use of a seat belt under Pennsylvania law. There, the wife of a decedent brought a products liability action against a car manufacturer for the death of her husband in a one-vehicle accident. The case was bifurcated at trial between liability and damages and, at the *damage phase,* the defendant sought to introduce evidence concerning the decedent's non-use of the available seat belt, arguing that such evidence was admissible under the doctrine of "avoidable consequences."[14] The district court excluded

---

that negligence principles have no place in a strict products liability suit in *Lewis v. Coffing Hoist Division, Duff–Norton Co.,* 515 Pa. 334, 528 A.2d 590 (1987). There, the Court held that

evidence concerning industry standards is irrelevant in a proceeding under § 402A.

**14.** Comment f to section 433A of the Restatement (Second) of Torts sets forth the rule of

the evidence, holding that "evidence of non-use was 'akin to a claim of contributory negligence, which is not a defense in a strict liability case.' " *Id.* at 764 (quoting the district court in *Vizzini,* 72 F.R.D. 132, 139 (E.D.Pa.1976)). The defendant appealed, claiming, *inter alia,* that this ruling was erroneous.

We affirmed the exclusion. First, we observed that:

> The rule of avoidable consequences is closely akin to the doctrine of contributory negligence. Both describe the legal implications of plaintiff's negligent acts. Both are based on the policy of conservation of resources.. And '[b]oth rest upon the same fundamental policy of making recovery depend upon plaintiff's proper care for the protection of his own interests.'

*Id.* at 766 (quoting Prosser on Torts § 65 at 423).

Although we recognized that the two doctrines differ in that contributory negligence is a complete bar to recovery while application of the rule of avoidable consequences will result in a reduction in recovery, we found that the concepts are similar in their focus on the plaintiff's negligence—either the negligence that caused the injury or negligence that aggravated the injury.

We concluded that "[t]o extend the avoidable consequences rule to bar proportionate recovery for plaintiff's prior acts of negligence shifts the focus away from the question of plaintiff's aggravation of an existing injury to the question of plaintiff's contribution to the original cause of that injury. Thus, the inquiry becomes essentially one into the contributory negligence of the plaintiff." *Id.* at 766. Further, we stated that *McCown v. International Harvester Co.* constituted evidence that the Pennsylvania Supreme Court would reject evidence concerning the non-usage of a seat belt, both as to causation and to mitigation of damages. *Id.* at 767–68.

In *Davis v. Roosevelt Chrysler Plymouth, Inc.,* 5 Phila. 489, (C.P.Phila.County 1981), a common pleas court endorsed our approach in *Vizzini* and excluded evidence of the plaintiff's non-use of the seat belt both as to causation and to mitigation of damages. In *Davis,* the plaintiffs brought a products liability action under section 402A against the defendant car company, contending that the axle of the car severed suddenly, causing the plaintiff to lose control of the car and drive into a tree. When the car hit the tree, the plaintiffs suffered severe injuries. The plaintiffs were not wearing seat belts at the time of the accident, although the car was equipped with them.

The defendants sought to introduce evidence that the plaintiffs had not used the available seat belts, advancing the doctrine of "avoidable consequences" to reduce the plaintiffs' recovery by the amount of harm the plaintiffs could reasonably have avoided. According to the defendant, "occupants restrained, using the available lap belts and shoulder harnesses would not sustain the same injuries" as the plaintiffs did. *Id.* at 505. The court refused to admit the evidence, holding "[w]e are persuaded by the result in *Vizzini.*" *Id.* at 505.

At the outset, the court observed that, although the doctrine of "avoidable consequences" generally applies to a plaintiff's post-accident behavior, "we are not persuaded that the applicability of the doctrine ... is determined by a simplistic before or after accident test." *Id.* at 505–06 n. 58 (quoting *Vizzini v. Ford Motor Co.,* 569 F.2d at 770 (Weis, J., concurring and dissenting)). Second, the court assumed that the appropriate level of expert testimony establishing the causal relation between the plaintiffs' non-use of the seat belt and their damages had been established. Thus, the court did not face the difficult issue

"avoidable consequences" that permits the apportionment of harm based on the plaintiff's negligence. Further, section 465, comment c provides "apportionment may also be made where the antecedent negligence of the plaintiff is found not to contribute in any way to the

original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues." Thus, under the Restatement, the non-use of a seat belt would fall squarely within section 465 if not barred on some alternative basis.

concerning the quantum of expert testimony required. *Id.* at 507 n. 59. Finally, like the *Vizzini* court, the court held that there is no meaningful distinction between the concepts of avoidable consequences and contributory negligence when, as here, the focus is on the plaintiffs' pre-accident conduct.

> [T]here is no principal [sic] difference between contributory negligence and avoidable consequences, at least, when the latter is cast in its pre-accident form. Contributory negligence focuses on the plaintiff's negligence before an accident occurs. Avoidable consequences, in its pre-accident form, likewise focuses on the negligence of the plaintiff before the accident.

*Id.* at 508. (footnote omitted). The court concluded that permitting the introduction of the plaintiffs' non-use of the seat belts would be directly at odds with the Pennsylvania Supreme Court's dictates barring evidence of a plaintiff's negligence in products liability proceedings. *Id. See also Roundtree v. John B. White Ford, Inc.*, 2 Phila. 465, 480 (C.P.Phila.County 1979) ("plaintiff's failure to use her seatbelt is not a defense in a strict products liability case under section 402A;" however, the court left open whether such evidence was admissible for mitigation of damages purposes), *aff'd in part and rev'd in part*, Nos. 526, 620, slip op. (Super.Ct. Feb. 19, 1982).

Notwithstanding the foregoing precedent, the district court in *Kolbeck v. General Motors Corp.*, 745 F.Supp. 288 (E.D.Pa. 1990), *aff'd*, 950 F.2d 722 (3d Cir.1991) (table), reached the opposite conclusion. Kolbeck, a passenger in a Pontiac, brought an action against General Motors, the manufacturer of the Pontiac, alleging that the rearview mirror attachment "was defec-tively and carelessly designed and/or installed" and that this defect caused his injuries when his head struck the attachment after a collision between the Pontiac and another vehicle. General Motors moved, *in limine*, to introduce evidence of Kolbeck's non-use of the seat belt as a defense to liability and to mitigate damages.

Kolbeck urged that a Pennsylvania statute, the Occupant Protection Act, 75 Pa. Cons.Stat.Ann. §§ 4581–85 (Supp.1991), requiring the driver and front seat occupant of the vehicle to wear a seat belt but expressly prohibiting any alleged violation of the statute to be used as evidence in any civil action, should be applied to govern his case, although the accident took place before the statute was enacted.[15] *Id.* § 4581(e). The district court refused, noting that, because the statute "would alter the substantive rights of the litigants," the court required evidence that the General Assembly "clearly and manifestly" intended retroactive application of the statute. *Id.* at 294. There was no clear proof that the General Assembly had intended retroactive application. Further, the court concluded that, in its view, the Supreme Court would have admitted evidence of a plaintiff's non-use of the seat belt prior to the enactment of the statute.

In our view, the district court in *Kolbeck* mistakenly relied on Pennsylvania appellate decisions in negligence rather than products liability actions. Indeed, the court in *Kolbeck* did not mention the distinction under Pennsylvania law between negligence and products liability suits and the permissible defenses in each type of action, even though it characterized the case as a "products liability" rather than negligence action. *Id.* at 289. Thus, as the court seemingly overlooked the fact that

---

**15.** The Occupant Protection Act was effective at the time Dillinger's accident but we do not decide the case under the act as it appears that the 773 was not a vehicle subject to the act. We acknowledge, however, that the act could be read to exclude the introduction of non-use of a seat belt even for a vehicle not covered by the act as it provides that "nor shall failure to use a ... safety seat belt system be considered as contributory negligence nor shall failure to use such a system be admissible as evidence in the trial of any civil action." This proviso is not, at least by express terms, limited to vehicles covered by the act. Of course, if we are wrong and the act is applicable either because the act applies to the 773 or the proviso to any vehicle, then our result would not be changed. Furthermore, without being directly applicable, the act may be useful here as an indication of Pennsylvania public policy.

contributory negligence is not a defense in a products liability suit, *Kolbeck* is not persuasive authority on the seat belt issue.

■ In light of the foregoing decisions, and setting aside *Kolbeck* which we will not follow, we are satisfied that the district court in this case erred in admitting evidence of Dillinger's non-use of the seat belt, even for the limited purpose of mitigating damages. For this reason, it is unnecessary to assess the sufficiency of Dillinger's expert testimony concerning the injuries he would have avoided if he had worn a seat belt, because it was error to admit any evidence on this subject.[16] However, as we have already indicated, because the jury determined that Caterpillar's product was either not defective or that the defect was not a substantial factor in causing the accident, this error was harmless.[17]

### B. Evidence Concerning Dillinger's Allegedly Negligent Conduct

At trial, Dillinger requested the district court to exclude evidence concerning his *failure to use* the alternative braking systems, his failure to read the operator's manual and his limited experience driving the 773 on the ground that such evidence constituted contributory negligence and was inadmissible in this products liability proceeding. The district court denied his request because it found that the evidence was relevant to whether the allegedly defective product *caused* his injuries.

■ Further, the court's final charge expressly permitted the jury to consider Dillinger's alleged negligence when determining whether Caterpillar's product *caused* his injuries, when it identified the defense of the case as follows:

> The defendant denies that it is liable for plaintiff's injuries. Defendant contends that the 773 truck was not defectively designed, and that any injuries sustained by plaintiff were *caused by the acts of plaintiff himself.* Specifically, defendant contends that safety instructions provided with the 773 truck were ignored and safety instructions provided on the 773 truck were not used.

App. at 50 (emphasis supplied).[18]

Although Dillinger contends that the court's admission of evidence concerning

---

**16.** The Pennsylvania Supreme Court's decision in *Martin v. Owens–Corning Fiberglas Corp.*, 515 Pa. 377, 528 A.2d 947 (1987), does not alter this analysis. In *Martin*, an insulation worker who suffered asbestosis sued asbestos manufacturers for compensatory and punitive damages. A plurality of the Supreme Court held that section 433 of the Restatement (Second) of Torts, which permits the apportionment of harm to separate causes, applied to the case, but concluded that there was insufficient evidence to apportion damages between the worker's exposure to asbestos and emphysema resulting from cigarette smoking.

In our view *Martin* is inapplicable here. In *Martin* the evidence supported the conclusion that the plaintiff's own conduct completely unrelated to his exposure to asbestos contributed to his condition, though the extent of the contribution was a matter of speculation. On the other hand the harm caused by Dillinger's conduct in not using a seat belt was directly intertwined with the harm caused by Caterpillar's product in the sense that, without the accident caused by the defect, Dillinger's own conduct would have caused him no injury. Thus, apportionment here *could only be for the purpose of* negating a portion of the harm directly caused by the failure of the product. Certainly such an apportionment is not comparable to requiring a plaintiff to bear a loss which he would have

suffered even if there had been no defect in the product and hence no accident.

**17.** Of course, it could be argued, as Dillinger did during oral argument before us, that the jury was influenced by the evidence concerning Dillinger's failure to use the available lap belt in determining whether Caterpillar's product was defective or whether a defect caused Dillinger's injuries. However, we must assume that the jury was competent to follow and did follow the instructions given. *City of Los Angeles v. Heller*, 475 U.S. 796, 798, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986).

**18.** Evidence concerning the mere existence of the alternative braking systems is admissible as it relates to the existence of a defect in the truck. However, Caterpillar effectively framed the issue as one of contributory negligence by stating that Dillinger's *failure to use* the alternative braking systems caused the accident. In addition, in its closing argument, Caterpillar stated that it "didn't know why" Dillinger had not used the alternative braking systems, but perhaps this was because, as Dillinger had stated in his deposition, he did not know how to operate the 773 safely. Caterpillar then argued that Dillinger's actions, not a defect in the truck, were the cause of his injuries.

Although during the charge conference the court initially stated that it would only permit

his "contributory negligence" and its final charge to the jury constitute reversible errors under Pennsylvania law, Caterpillar points to a line of cases which suggests that, although evidence of a plaintiff's contributory negligence is ordinarily inadmissible in a products liability proceeding, it is admissible to rebut the "causation" prong of a products liability claim. A close examination of the leading decisions advocating this view is required in an attempt, ultimately futile in some instances, to reconcile them with the Pennsylvania Supreme Court's declarations on this subject. Because the district court's determination is a question of law, our review is again plenary.

In *Bascelli v. Randy, Inc.*, 339 Pa.Super. 254, 488 A.2d 1110 (1985), the Superior Court diluted the force of the Supreme Court of Pennsylvania's decisions in *McCown* and *Azzarello* by holding that, although a plaintiff's contributory negligence is ordinarily inadmissible in a products liability proceeding, it is admissible to negate causation. In *Bascelli*, the plaintiff brought a strict products liability suit against a motorcycle manufacturer, alleging that a defect in the design and manufacture of the motorcycle caused him to lose control of the vehicle and crash. The trial court excluded evidence that the plaintiff had been travelling at approximately 100 miles per hour at the time of the accident on the ground that the evidence "tended to show contributory negligence" which was irrelevant in a products liability proceeding.

The Superior Court reversed. It held, "the cause for [plaintiff's] losing control of his motorcycle was an issue of fact for the jury. An admission by [the plaintiff] that he had lost control of the cycle while going 100 miles per hour was significantly relevant and extremely important evidence. It was admissible to show the cause of the accident; to exclude it for that purpose was error." *Id.* at 259, 488 A.2d at 1113 (footnote omitted). The court further noted that "the evidence could not be excluded merely because it also tended to show 'contributory negligence' on the part of the operator," and cited our opinion in *Greiner v. Volkswagenwerk Aktiengesellleschaft*, 540 F.2d 85 (3d Cir.1976) as support for that conclusion.

There are various grounds for distinguishing *Bascelli* from this case. First, the court in *Bascelli* relied on our decision in *Greiner* to support its conclusion that a plaintiff's contributory negligence is admissible for purposes of undermining causation in a products liability suit.[19] But at

---

Caterpillar to introduce evidence concerning the existence of the alternative braking systems because that evidence related to the existence of a defect, the court modified its determination and permitted Caterpillar to argue that Dillinger's actions caused the accident and his injuries, but merely barred Caterpillar from arguing that Dillinger's actions constituted contributory negligence.

Thus, we must determine whether it was proper for the district court to permit the jury to consider Dillinger's conduct as it relates to causation, and not whether the mere admission of the existence of the braking systems and the operator's manual would have been proper. In reaching our result we do not ignore Caterpillar's contention in its brief that "[i]f evidence of the existence of backing safety systems was properly admitted, which it was, then there was no logical basis for excluding evidence that [Dillinger] failed to take advantage of these systems." While there is force to this argument, we point out that it is not our function to establish Pennsylvania law. Rather, we merely apply the precedents to predict how its Supreme Court would rule. We also point out that our

result may not be as anomalous as Caterpillar believes as the presence of the back-up systems goes to the defect *vel non* of the product whereas Dillinger's failure to use them goes to his negligence, obviously distinct concepts. Thus, the jury could conclude that, without regard for Dillinger's conduct, the existence of the back-up systems precluded a finding that the 773 was defective and such a finding would end the case. On the other hand if the jury found that even with the back-up systems the 773 was defective, then the causation question, defined by the district court in its special interrogatory as whether "the defect was a substantial factor in bringing about some injuries to [Dillinger]", should be limited to the alleged defect in the protection of the hoses or the absence of an adequate warning system, as the back-up systems simply by their very existence could not have contributed to the happening of the accident.

**19.** We also point out that in *Greiner,* the plaintiff was a passenger injured when the automobile she was riding in overturned. The plaintiff brought a strict products liability action against the automobile manufacturer which, in turn,

the time of our decision in *Greiner*, we did not have the benefit of the Pennsylvania Supreme Court's opinion in *Azzarello*, which significantly broadened the scope of liability under section 402A.

■ Of more significance the plaintiff's conduct in *Bascelli* actively contributed to the *cause* of the accident, while Dillinger's conduct in this case was merely insufficient to *prevent* the accident attributable to the defect of the 773.[20] Thus, here the evidence was compelling that the defect which resulted in the hose damage, rather than Dillinger's conduct, triggered the accident. A requirement that consumers be able to arrest accidents or injuries traceable to a defect in the design or manufacture of a product would be directly contrary to the Pennsylvania Supreme Court's view that it is reasonable for a consumer to expect a product to be safe. Indeed, inasmuch as such a view would turn the law of products liability on its head we predict that the Pennsylvania Supreme Court would not adopt it.

Finally the plaintiff's alleged conduct in *Bascelli* was highly reckless. Whereas the admission of evidence of a plaintiff's ordinary negligence is inadmissible in a products liability proceeding, evidence that a plaintiff acted in a highly reckless fashion is akin to evidence that a plaintiff misused a product which is admissible in a section 402A proceeding under Pennsylvania law.

In *Foley v. Clark Equipment Co.*, 361 Pa.Super. 599, 523 A.2d 379 (1987), *allocatur denied*, 516 Pa. 614, 531 A.2d 780 *and* 516 Pa. 641, 533 A.2d 712 (1987), the Superior Court again endorsed the admission of evidence of a plaintiff's contributory negligence in a section 402A suit. There, the plaintiff, who was struck by a forklift when the forklift driver failed to notice him, brought suit against the forklift manufacturer to recover for injuries sustained in the accident. The plaintiff alleged that

the manufacturer had defectively designed the forklift in that it did not include a device to alert pedestrians of its presence and because the frontal carriage of the forklift improperly obstructed the driver's view.

The trial court excluded evidence that suggested that both the plaintiff and the driver had paid inadequate attention and that their neglect, not a design defect, had caused the accident. At the close of the case the jury returned a verdict in favor of the plaintiff. The Superior Court reversed, holding that the trial court's exclusion of evidence concerning the plaintiff's and the operator's inattention was improper, and ordered a new trial.

At the outset, the court observed that "in cases where the cause of the plaintiff's injury is attributed to product design, there is no practical difference between theories of negligence and strict liability [because] . . . [t]he focus under either theory, . . . [is] whether the manufacturer's choice of design was reasonable." *Id.* at 612, 523 A.2d at 385. Any attempt to exclude negligence principles from this type of products liability suit was, in the court's view, a "futile exercise in analytical and linguistic gymnastics." *Id.* In light of the inextricable overlap between negligence and products liability the court urged a "move toward a negligence standard in design cases." *Id.* at 620, 523 A.2d at 389.

■ Although this move was "irresistible," the court felt constrained to apply the law in its then present form, which included a prohibition of the introduction of a plaintiff's negligence in section 402A actions, even where the suit is predicated upon a design defect. However, as in *Bascelli*, the court held that "negligen[t] . . . conduct is admissible where it is relevant to establish causation." *Id.* at 626, 523 A.2d at 393. Accordingly, the plaintiff's alleg-

---

attempted to introduce evidence that the driver had been drinking alcohol before driving. We held that such evidence was admissible. Thus, *Greiner* did not involve a plaintiff's negligence.

**20.** This analysis provides an additional basis on which to distinguish *Greiner* from this case:

even assuming the plaintiff in *Greiner* had been the driver, her intoxication would undercut the allegation that a defect in the vehicle "caused" the accident. Here Dillinger was merely unable to prevent the accident that was triggered by the loss of hydraulic fluid from the damaged hoses.

edly negligent behavior in failing to pay attention was admissible for this purpose. Further, the court noted that the admission of this evidence was consistent with the approach embodied in section 433 of the Restatement. That section assigns to the jury the task of determining whether the alleged defect constituted a "substantial factor" in causing the plaintiff's injuries. Further, section 433 provides that an intervening act which operates as a superseding cause[21] of the injury will relieve the manufacturer of liability.[22]

In our view, *Foley* does not accurately reflect the approach the Pennsylvania Supreme Court would follow in a strict products liability proceeding. In case after case, the Pennsylvania Supreme Court has made clear that evidence of a plaintiff's contributory negligence is inadmissible in a strict products liability proceeding. For example, in *Berkebile*, the court noted that "[t]he crucial difference between strict liability and negligence is that the existence of due care, whether on the part of the seller or consumer, is irrelevant." 462 Pa. at 94, 337 A.2d at 899. Next, in *McCown*, the court specifically held that the plaintiff's contributory negligence was inadmissible to reduce the plaintiff's recovery or to determine the defendant's liability. 463

Pa. at 15–17, 342 A.2d at 382. In *Azzarello*, the court underscored the notion that the supplier of a product is the "guarantor" of the product's safety, and that the jury could find that a product is defective if it "lacked any element necessary to make it safe for [its intended] use." 480 Pa. at 560, 391 A.2d at 1027. The court further precluded the mention of the term "unreasonable" in an instruction concerning the existence of a defect. Pennsylvania's appellate courts, as well as federal courts construing Pennsylvania law, have observed that the Supreme Court has unequivocally excluded negligence concepts from product liability cases. *Conti v. Ford Motor Co.*, 578 F.Supp. at 1434; *Staymates*, 364 Pa.Super. at 43–44, 527 A.2d at 143.

Most importantly, there is no meaningful way to reconcile the view that a plaintiff's negligence of the type involved in *Foley* should be admitted to undercut causation with the Supreme Court's prohibition of the introduction of a plaintiff's negligence to defeat liability. A comparison of the Supreme Court's decision in *McCown* with the Superior Court's decision in *Foley* is instructive.

In *McCown*, the plaintiff struck a guardrail while driving a truck manufactured by

---

**21.** A contention that Dillinger's conduct constituted a "superseding" cause of the injury would be untenable. Section 442 of the Restatement (Second) of Torts provides that the following factors should be considered by the jury when determining whether an intervening force is a superseding cause of harm to another:

    (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

    (b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

    (c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

    (d) the fact that the operation of the intervening force is due to a third person's act or his failure to act;

    (e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

    (f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

Plainly, none of these provisions suggests that Dillinger's conduct should be regarded as a superseding cause of the accident or his injuries.

**22.** Section 433 of the Restatement 2d of Torts, entitled "considerations important in determining whether negligent conduct is substantial factor in producing harm," explains that the jury should be permitted to consider various factors in determining whether the actor's conduct constituted a "substantial factor" in bringing about the harm. However, the Pennsylvania Supreme Court has indicated that negligence on the part of the plaintiff is inadmissible in a products liability suit. This pronouncement is most forceful where, as here, the asserted negligence is the inability of the plaintiff to prevent injury or harm triggered by a defective product. For this reason, section 433, although intuitively appealing, cannot provide a basis upon which to permit the admission of Dillinger's alleged negligence.

the defendant. This collision caused the steering wheel to spin rapidly; as a result, the spokes of the wheel injured the plaintiff's arm. Although the entire accident would probably have been avoided if the plaintiff had not negligently crashed into the guardrail, the court excluded that evidence. In *Foley*, the plaintiff did not observe the oncoming forklift and did not move out of its way. Because the driver similarly had not noticed the plaintiff, the driver crashed into him. Although the plaintiff contended that the design of the forklift—like the design of the steering wheel—was defective because, in part, the frontal carriage obstructed the driver's view, the court permitted the defendant to introduce evidence of the plaintiff's inattention because the accident could have been avoided if the plaintiff had not acted negligently. This comparison confirms that the there is no principled reason to prohibit evidence of the plaintiff's negligence in *McCown* but permit evidence of an almost identical character in *Foley*.

Finally, even if the distinction could be made, this case provides an even stronger basis than in both *McCown* and *Foley* for excluding evidence of a plaintiff's negligent conduct. In both *McCown* and *Foley*, the plaintiff's conduct set the accident in motion. In this case, however, Dillinger's conduct was merely insufficient to arrest the accident set in motion by the allegedly inadequate protection of the hoses resulting in the loss of the hydraulic fluid and the absence of an adequate warning system. The Court in *McCown* highlighted the importance of this distinction when it said:

'Our courts have determined that a manufacturer by marketing and advertising his product[ ] impliedly represents that it is safe for its intended use'.... Based on that implied representation is the consumer's assumption that a manufacturer's goods are safe. Recognition of consumer negligence as a defense to a 402A action would contradict this normal expectation of product safety. One does not inspect a product for defects *or guard against the possibility of product defects when one assumes the item to be safe. The law should not require such inspection or caution when it has accepted as reasonable the consumer's anticipation of safety.*

463 Pa. at 16–17, 342 A.2d at 382 (quoting *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 32, 319 A.2d 903, 907 (1974)) (emphasis supplied).

For these reasons, evidence of Dillinger's failure to use the alternative braking system or read the operator's manual should not have been admitted to negate causation.[23]

---

**23.** Two other decisions, *Gallagher v. Ing*, 367 Pa.Super. 346, 532 A.2d 1179 (1987), *allocatur denied*, 519 Pa. 665, 548 A.2d 255 (1988) and *Brandimarti v. Caterpillar Tractor Co.*, 364 Pa.Super. 26, 527 A.2d 134 (1987), *allocatur denied*, 517 Pa. 629, 539 A.2d 810 (1988), also provide some support for Caterpillar's contention that Dillinger's allegedly negligent conduct should be admitted to negate the causation prong of plaintiff's claim. *See also Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 329–33, 319 A.2d 914, 920–21 (1974) (intervening negligence of third party). In *Gallagher*, the administratrix commenced a wrongful death action against the defendant car manufacturer, alleging that a defect in the automobile caused the decedent's accident. The trial court permitted the defendant to introduce evidence of the decedent's blood alcohol level and the jury returned a verdict in favor of the defendant. On appeal, the Superior Court affirmed the trial court's admission of the evidence, holding "[t]he evidence was sufficient, if believed, to show that the decedent was so intoxicated that he was incapable of driving safely and that this was the legal cause for his loss of control of the vehicle which he was driving." 367 Pa.Super. at 352, 532 A.2d at 1182.

Even assuming *arguendo* that the admission of evidence of a plaintiff's negligence as that evidence relates to causation does not violate the Supreme Court's case law, the plaintiff's conduct in *Gallagher*, like that of the plaintiff in *Bascelli*, is distinguishable from that of Dillinger. In both *Gallagher* and *Bascelli* the plaintiff's conduct was at the onset of the events leading to the accident, while the most that can be said of Dillinger is that he was unable to prevent the occurrence of the accident. *McCown* excludes evidence of this kind.

Next, in *Brandimarti*, a forklift operator injured when the forklift overturned brought suit against the manufacturer, alleging that the forklift was defectively designed. The trial court improperly submitted social policy considerations to the jury concerning the defective condition of the product and the Superior Court reversed. The Superior Court cautioned the trial judge that "the introduction of the element of

## C. *Permissible Defenses in a Section 402A Proceeding*

■ The Pennsylvania Supreme Court has never held that evidence of a plaintiff's conduct is irrelevant and inadmissible in such actions for any purpose. Rather, the defendant is permitted to introduce evidence that the plaintiff assumed the risk or misused the product, and possibly may introduce evidence that the plaintiff engaged in highly reckless conduct[24] to defeat a products liability claim.

### 1. Assumption of the Risk

■ The Pennsylvania courts have consistently held that a plaintiff's assumption of the risk is a defense to strict products liability. *See Berkebile v. Brantly Helicopter Corp.*, 462 Pa. at 98–100, 337 A.2d at 901. Under this theory, the defendant has "the burden of showing the subjective awareness of the defect by the injured party." *Ellis v. Chicago Bridge & Iron Co.*, 376 Pa.Super. 220, 545 A.2d 906, 915 n. 17 (1988). *Accord, Staymates v. ITT Holub Industries*, 364 Pa.Super. at 48–50, 527 A.2d at 146. But here, Caterpillar did not introduce evidence that Dillinger was aware of any defect in the 773. Thus, this doctrine does not provide a basis for affirming the court's ruling.

### 2. Misuse of the Product

■ The Pennsylvania courts additionally appear to permit the defendant to introduce evidence establishing that the plaintiff misused the product to defeat a products liability claim. *Sherk v. Daisy–Heddon*, 498 Pa. 594, 450 A.2d 615 (1982), is an example. In that case, the administratrix of the decedent's estate brought a wrongful death action against the defendant air rifle manufacturer. The decedent had been playing with his 14–year–old "friend" when his friend pointed the air rifle at the decedent's head, pulled the trigger and killed the decedent.

The administratrix alleged that the defendant was strictly liable for failing to place adequate warnings concerning the lethal propensity of the rifle. The jury returned a verdict in favor of the defendant but the Superior Court reversed. On appeal, the Supreme Court, in a plurality opinion, reversed the Superior Court's decision and reinstated the jury's determination. In reversing, the court noted:

> [L]iability cannot be imposed upon the manufacturer merely because the manufacturer allegedly has failed to warn of that propensity. As stated by Dean Prosser, '[t]here appears to be no reason to doubt that strict liability has made no change in the rule, well settled in the negligence cases, that the seller of the product is not to be held liable when the consumer makes an *abnormal use* of it. Sometimes this has been put on the ground that the manufacturer has assumed responsibility only for normal uses; sometimes it has gone off on "proximate cause" ' . . . .

498 Pa. at 599–600, 450 A.2d at 618 (quoting Prosser, *The Fall of the Citadel*, 50 Minn.L.Rev. 791, 824 (1966)) (emphasis supplied) (footnote omitted).

Hence, the trial court in *Sherk* properly permitted the jury to consider the decedent's friend's conduct as a misuse of the defendant's product for which the defendant should not be responsible. *Accord, Walasavage v. Marinelli*, 334 Pa.Super. 396, 407, 483 A.2d 509, 515 (1984); *Burch v. Sears, Roebuck & Co.*, 320 Pa.Super. 444, 467 A.2d 615, 619 (1983).

---

due care or lack thereof is not an issue in a strict liability case." 364 Pa.Super. at 33, 527 A.2d at 138. However, the court held that "inquiry as to plaintiff's use of the product is relevant as it relates to causation." *Id.* This comment is vague and not necessarily of much help to Caterpillar. It can be read as an indication that a plaintiff's misuse of a product is admissible to undercut causation, which is permitted by *Sherk v. Daisy–Heddon*, 498 Pa. 594, 450 A.2d

615 (1982), and is consistent with *McCown* and *Azzarello*.

**24.** Insofar as we are aware the Pennsylvania Supreme Court has not placed its imprimatur on the availability of this defense. However, it provides an additional basis upon which to distinguish decisions such as *Bascelli* from this case and to reconcile *Bascelli* with the Supreme Court's rulings.

In this case, Caterpillar did not establish that Dillinger had misused the 773. Indeed, during the charge conference, the district court specifically ruled that Dillinger's conduct did not constitute a misuse of the 773 and for that reason the court declined to instruct the jury on that doctrine.

### 3. Highly Reckless Conduct

■ Finally, some decisions suggest that the defendant is permitted to introduce evidence of the plaintiff's highly reckless conduct to defeat a products liability claim.[25] The court in *Gottfried v. American Can Co.*, 339 Pa.Super. 403, 489 A.2d 222 (1985), provides the most unequivocal endorsement of this theory. There, the plaintiff brought a products liability suit against the defendant can manufacturer for injuries she received while opening a can on the ground that the can had been defectively manufactured and/or designed and this defect caused the plaintiff's injury. The jury found that the plaintiff's injury had not been caused by a defect but had been caused by the plaintiff's own reckless conduct in permitting her hand to come in contact with the sharp edge of the can. The Superior Court affirmed that determination and observed " '[t]he ... issue of causation is raised when the plaintiff's action is so reckless that the plaintiff would have been injured despite the curing of any alleged defect, or is so extraordinary and unforeseeable as to constitute a superseding cause.' " *Id.* at 409, 489 A.2d at 225

(quoting *Burch v. Sears, Roebuck & Co.*, 320 Pa.Super. at 452, 467 A.2d at 619). In this case, it cannot reasonably be maintained that Dillinger's conduct was "highly reckless" or "extraordinarily unforeseeable."

Thus, the district court should not have permitted Caterpillar to introduce evidence of Dillinger's negligence to rebut causation; moreover, none of the accepted defenses to a strict products liability claim provides a means to permit the introduction of this evidence. Thus, the district court's ruling constitutes reversible error.[26]

### D. *The waiver issue*

■ In reaching our result we have not lost sight of the point raised by Judge Alito in his dissent. He indicates that at the trial Dillinger "voluntarily brought out [the] facts" regarding his failure "to use the alternative braking system after the primary brakes failed." At 449. Judge Alito sets forth that it was not "until the next day, just before cross-examination" that Dillinger's attorney moved "to exclude evidence that his client had not used the alternative braking system." At 449. He then concludes that inasmuch as the attorney "deliberately and voluntarily chose to elicit testimony from his client regarding his failure to use the alternative braking systems and his reasons for not using those systems, [Dillinger] cannot reasonably maintain that the jury verdict should be over-

---

**25.** Indeed, *Bascelli* can be read as so holding.

**26.** In light of our determination that the district court erred in permitting Caterpillar to introduce evidence of Dillinger's conduct to rebut the causation prong of his strict products liability claim, we need not decide Dillinger's two additional claims. First, Dillinger claims that the district court's refusal to instruct the jury on the doctrine of "sudden emergency" constitutes reversible error. The district court refused to give this instruction on the ground that Dillinger had chosen to litigate this case on a strict liability theory, not a negligence theory, and the court could not permit the jury to consider whether Dillinger had acted in a negligent fashion, or whether the "sudden emergency" doctrine vitiated Dillinger's negligence.

Dillinger argues that "[t]he anomaly inherent in the judge admitting evidence of contributory

negligence because it goes to causation and denying plaintiff the benefit of the excuse or defense for his actions is apparent. The trial court allowed defendant to administer the poison and refused plaintiff the antidote. This presented an insurmountable burden on plaintiff." Caterpillar responds that a sudden emergency charge would have "introduced the 'poison' of the language of negligence into the proceedings," and the district court properly declined to give such a charge. Because, on remand, the "poison" will not be injected, there is no need to assess whether an "antidote" is in order.

Dillinger's second argument is that the district court erred in excluding portions of the Beckwith report prepared on the day of the accident. If necessary the district court will have an opportunity to re-examine its conclusion that the report is untrustworthy and inadmissible under Fed.R.Evid. 803(6) at the new trial.

turned because evidence on these very matters was admitted." At 449.

But there is an insurmountable procedural difficulty with this position. To start with, Caterpillar never advanced this argument at trial, an oversight that Judge Alito excuses on the ground that a district court decision may be affirmed on an alternate ground though not advanced at trial.[27] But even if we assume that this is true it does not overcome the problem that Caterpillar did not raise the issue on appeal either. To the contrary, Caterpillar's brief recites that:

> At trial before any witnesses were called, counsel for [Dillinger] asked the district court to preclude any evidence concerning the presence of other available braking and steering systems on the 773 and [Dillinger's] failure to use such systems on the ground that such evidence would constitute evidence of 'contributory negligence.' (Tape 2, 4/17/91, 09:47:45) The district court denied counsel's request, stating that evidence of backup braking and steering systems was admissible because it bore on the question whether the 773 was defective.

Brief at 30.

Thus, it is clear that Caterpillar in its brief did not assert that Dillinger waived any objection to evidence regarding his failure to use the alternative braking systems by his trial testimony. Indeed, the exact opposite is true in that Caterpillar represented that Dillinger had made a timely objection to the evidence and therefore properly preserved the point for this appeal. This is, of course, understandable as Caterpillar did not advance the waiver argument at trial and the district court did not rely on Dillinger's having initially presented evidence on the point in making its ruling. To the contrary the district court ruled that the evidence was admissible on the merits.

In addition, Caterpillar did not even advance this contention at oral argument before us. In fact, the only reason that the issue of Dillinger's having opened up the matter is mentioned at all on this appeal is that a re-examination of the record *by the court after* oral argument revealed that Caterpillar's representation that Dillinger had objected to the testimony "before any witnesses were called" was incorrect. Accordingly, the undeniable fact is that the court, in deciding the case, discovered more about the record than Caterpillar's own attorneys knew. In this case Caterpillar's misrepresentation cannot possibly be excused as its attorneys on the appeal were also its trial attorneys and accordingly should have known what happened at the trial.[28]

The significance of Caterpillar's misrepresentation is quite apparent. As was recognized in *Simmons v. City of Philadelphia,* 947 F.2d 1042 (3d Cir.1991), in view of Fed.R.App.P. 28 and our Rule 21 "absent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations," 947 F.2d at 1065, and "[u]nder the specificity requirements of Fed.Rule of Appellate Procedure 28 and Third Circuit Rule 21, a passing reference to an issue in a brief will not suffice to bring that issue before this court on appeal." 947 F.2d at 1066.[29] Indeed, we have gone so far as to refuse to decide an issue where it is first raised in a reply brief. *Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 204 n. 29 (3d Cir.1990). We are not alone in our approach that parties must raise issues in their briefs if they seek judicial review. *See Najarro v. First Fed. Sav. & Loan Ass'n,* 918 F.2d 513, 516 (5th Cir.1990); *G.*

**27.** *But see Brenner v. Local 514, United Brotherhood of Carpenters,* 927 F.2d 1283, 1298 (3d Cir.1991) ("failure to raise an issue in the district court constitutes a waiver of the argument").

**28.** While Caterpillar's brief undoubtedly misrepresented the situation at trial we do not suggest that it did so deliberately.

**29.** Fed.R.App.P. 28 was amended effective December 1, 1991, but the amendments do not change the specificity requirements noted in *Simmons.*

*Heileman Brewing Co. v. Joseph Oat Corp.*, 848 F.2d 1415, 1419 (7th Cir.1988); *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 738 (9th Cir.1986).

Judge Alito would excuse Caterpillar's misrepresentation because he believes that "sound judicial administration" is not furthered by requiring "a district court and jury to retry a case because of a prior evidentiary ruling that was *correct.*" At 449 n. 2. The difficulty with this is that if the ruling was "correct" it was only because Dillinger opened up the issue. But to reach that issue we would first have to excuse Caterpillar's misrepresentation on the appeal and its failure to even mention the issue in its brief or during oral argument. But we will not do that as we do not understand why Caterpillar should not be held to the procedural consequences of taking a position on an appeal. To the contrary, in this private litigation we think the case should be decided on the basis of the issues as tendered. Finally, we observe that, if the district court's ruling was "correct" that was only for procedural reasons. Substantively the ruling was *incorrect.* Overall, we are quite clear that the proper application of the procedural rules as well as the interests of justice require that Dillinger, who was seriously injured in the accident, be granted a new trial at which prejudicial inadmissible evidence will not be heard by the jury.[30]

## III.

## CONCLUSION

In conclusion, the district court erred in admitting evidence of Dillinger's non-use of the available seat belt, but because the jury determined that the appellee's product was either not defective, or the defect did not substantially contribute to his injuries, this error was harmless. The district court further erred in admitting evidence of Dillinger's negligent conduct to rebut causation. There is no principled way to reconcile the admission of a plaintiff's negligence to rebut causation where the asserted negligence is the plaintiff's inability to arrest an accident set in motion by a defective product with the Supreme Court's decisions in *Berkebile, McCown* and *Azzarello.*

Accordingly, we will reverse the judgment entered by the district court and will remand the matter for a new trial.

ALITO, Circuit Judge, dissenting.

1. I would affirm the judgment of the district court. I agree with the majority that admission of evidence of seat belt nonuse was error. I reach this conclusion based on 75 Pa.Cons.Stat.Ann. § 4581(e), which states unequivocally (emphasis added): "nor shall failure to use a ... safety seat belt system be considered as contributory negligence *nor shall failure to use such a system be admissible as evidence in the trial of any civil action.*"[1] For the

**30.** Of course, we recognize that we sometimes raise issues that the parties have overlooked and undoubtedly we could do that here. We, however, see no reason to decide a case on the basis of an issue not raised by the parties and not pertaining to our jurisdiction or that of the district court when the consequence of the decision would be to deprive a seriously injured plaintiff of a trial in conformity with applicable law.

Judge Becker does not believe it necessary to reach the question of whether Caterpillar waived Dillinger's waiver. In his view, that Dillinger's failure to use the alternative braking systems would be mentioned at trial or that the jury would speculate about it was predictable, and thus the critical point is not that the evidence of Dillinger's own conduct came in but for what purpose it was admissible. On that subject, Dillinger's counsel made it clear before Caterpillar introduced any evidence that he ob-

jected to Caterpillar's use of Dillinger's conduct to show contributory negligence or to disprove causation. Judge Becker therefore believes that Dillinger waived nothing, and thus Caterpillar had no waiver to waive. Therefore, this subsection entitled "D. The waiver issue" only represents the views of Judge Greenberg.

1. I disagree with Caterpillar's argument that this portion of 75 Pa.Cons.Stat.Ann. § 4581(e) does not apply to the 773 truck. It is true that the portions of the statute requiring seat belt use do not apply to heavy trucks like the 773. *See* 75 Pa.Cons.Ann.Stat. § 4581(a), (b). But the statutory language quoted in text contains no such limitation, and I see no basis for inferring one. Moreover, this language, at the very least, expresses a strong state public policy against admission of such evidence. Since the legislature plainly wanted to preclude admission of seat belt nonuse in cases where nonuse was unlaw-

reasons explained by the majority, however, I agree that this error was harmless.

2. I reject plaintiff's argument that the trial court erred in admitting evidence that he failed to use the alternative braking system after the primary brakes failed. The plaintiff himself voluntarily brought out these facts during his direct examination. Before raising any objection regarding the introduction of this evidence, the plaintiff testified as follows on direct examination (emphasis added):

Q. What did you do then [when you thought you were in a slide]?

A. Continued to hold on to the brake and the steering wheel. I just—different things ran through my mind.

Q. What ran through your mind?

A. From the point of maybe getting out—bailing out—changed that. Continue to try to hold on to the brake and the steering wheel and, ah, I just thought it was in a slide. It was just confirmed in my mind that I was in a slide and I couldn't stop this thing....

Q. ... *Did you try any of the other brake systems?*

A. *No sir.*

Q. *Why not? ...*

A. *No sir. At that particular point that I was just convinced that I was sliding and I could not hold that truck.*

Not until the next day, just before cross-examination began, did plaintiff's attorney move to exclude evidence that his client had not used the alternative braking system. In my view, this was too late.[2] Because plaintiff's attorney deliberately and voluntarily chose to elicit testimony from his client regarding his failure to use the alternative braking systems and his reasons for not using those systems, the plaintiff cannot reasonably maintain that the jury verdict should be overturned because evidence on these very matters was admitted. *See, e.g., United States v. Vachon,* 869 F.2d 653, 658 (1st Cir.1989); *United States v. Kessi,* 868 F.2d 1097, 1108 (9th Cir.1989); *United States v. Gipson,* 862 F.2d 714, 717 (8th Cir.1988); *United States v. Wynn,* 845 F.2d 1439, 1443–44 (7th Cir. 1988); *United States v. Bailleaux,* 685 F.2d 1105, 1110 (9th Cir.1982). "Where counsel deliberately introduces evidence as a matter of trial strategy, a later change of heart would be a slender reed upon which to rest arguments for upsetting the verdict and judgment which the judicial process has labored to obtain." 1 D. Louisell & C. Mueller, *Federal Evidence* § 11 at 47 (1977 & 1991 Supp.).[3]

ful, it seems to follow *a fortiori* that the legislature would not have wanted such evidence admitted in cases in which nonuse was lawful.

**2.** In arguing this motion, the attorneys surprisingly made no reference to plaintiff's direct testimony the day before on this exact point, and the district court likewise denied the motion on the merits without mentioning the plaintiff's testimony. Following the same pattern, neither party's appellate brief mentioned the plaintiff's testimony that he had failed to use the alternative braking systems.

Despite this course of events, I think that we may properly consider the fact that the plaintiff himself deliberately introduced evidence on the very point at issue. While defendant's attorney and the district court did not mention plaintiff's direct testimony during the argument and ruling on plaintiff's motion to exclude, the general rule that a district court decision may be affirmed on an alternative ground is well established. *See Armotek Industries, Inc. v. Employers Insurance of Wausau,* 952 F.2d 756, 759 n. 3 (3d Cir.1991). Moreover, it is clear that a correct evidentiary ruling may be sustained on appeal even if the trial judge's stated reason for

the ruling was incorrect. *Hamling v. United States,* 418 U.S. 87, 108 n. 10, 94 S.Ct. 2887, 2903 n. 10, 41 L.Ed.2d 590 (1974). As for Caterpillar's failure in its appellate brief to mention plaintiff's direct testimony as a ground for affirmance, I believe this presents what is essentially an issue of sound judicial administration. Specifically, I believe it requires us to balance concern for the efficient disposition of appeals (which may be furthered by insisting that parties comply strictly with the requirements of Fed.R.App.P. 28(a)(5)) against concern for efficiency in the work of the district courts (which is surely not furthered by requiring a district court and jury to retry a case because of a prior evidentiary ruling that was *correct* ). Considering these countervailing concerns, I believe, under the circumstances here, that requiring a retrial is not justified.

**3.** Even if the plaintiff had not testified as he did on direct examination, I would still affirm. Evidence that the plaintiff did not use the alternate braking systems was relevant under Fed.R.Evid. 401 for two reasons. First, this evidence tended to show absence of defect. The jury knew that the 773 had alternate braking systems but had

3. Nor would I reverse the judgment of the district court based on the jury instructions. In the course of the argument in the plaintiff's brief concerning the admission of evidence that he did not use the alternative braking systems, the following passage concerning the jury charge appears (Appellant's Brief at 25): [4]

> Plaintiff's counsel took an exception after the judge's charge to those parts of the charge set forth below.

The brief then sets out the following portion of the charge:

> The Defendant denies that it is liable for Plaintiff's injuries. Defendant contends that the 773 truck was not defectively designed, and that any injuries sustained by plaintiff were caused by the acts of plaintiff himself. Specifically, defendant contends that safety instructions provided with the 773 truck were ignored and safety devices provided on the 773 truck were not used.

The brief contains no further discussion of the jury charge. In the district court, however, plaintiff's attorney stated after the instructions were given that portions of the charge "smack more of contributory negligence than they do of probable causation." In my view, the judgment of the district court should not be reversed on this ground.

There is no dispute that, under Pennsylvania law, the plaintiff in a products liability case must prove that the alleged defect was the proximate cause of injuries to the plaintiff and that causation in this context means that the defect must have been a "substantial factor" in bringing about the harm. *Sherk v. Daisy–Heddon,* 498 Pa. 594, 598, 450 A.2d 615, 617 (1982) (plurality); *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 93–94, 337 A.2d 893, 898 (1975) (plurality); *Bascelli v. Randy, Inc.,* 339 Pa.Super. 254, 488 A.2d 1110 (1985); *see Restatement (Second) of Torts,* § 431 and comment e. Shortly after delivering the portion of the charge to which the plaintiff objects, the district court accurately instructed the jury on proximate causation, and the plaintiff does not contend that this portion of the charge was improper.

It seems to me that the challenged portion of the jury instructions did no more than summarize for the jury the defendant's factual arguments on the issue of proximate cause, and thus I find it difficult to see how these few words can provide a basis for reversal. The court did not misstate the law; indeed, in the portion of the charge at issue the court did not state the law at all. Nor did the court refer to any facts not properly in evidence. Instead, the court merely recounted the defendant's factual arguments, just as it had recounted

nevertheless slid back down the hill. Therefore, evidence that the plaintiff had not used the alternate braking systems was relevant to dispel the natural inference that the alternate braking systems had been ineffective in stopping the slide. Second, evidence that the plaintiff did not use the alternate braking system was relevant to show absence of proximate cause, i.e., that the alleged defect was not a substantial factor in causing the plaintiff's injuries but that those injuries resulted from the plaintiff's failure to use the alternate braking systems.

The plaintiff's argument for exclusion presents an issue under Fed.R.Evid. 403, i.e., should the evidence have been excluded because of the danger of unfair prejudice—the suggestion that the plaintiff should not recover because he was negligent? Because of our standard of review with respect to rulings under Rule 403 (*see Bhaya v. Westinghouse Electric Corp.,* 922 F.2d 184, 187 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991)), I would not reverse on this ground.

The Pennsylvania Supreme Court cases cited by the majority do not, in my view, concern the question that is before us. *Azzarello v. Black Brothers Co.,* 480 Pa. 547, 391 A.2d 1020 (1978), concerned the instructions that should be given to a jury regarding the meaning of the term "defect." *See also Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975) (opinion of Jones, C.J.) (discussing jury instructions on "defect," "proximate cause," and abnormal use). In *McCown v. International Harvester Co.,* 463 Pa. 13, 342 A.2d 381 (1975), the court held that contributory negligence was not a defense in a products liability case. None of these cases held or suggested that evidence that is relevant to show absence of defect or proximate cause must nevertheless be excluded if it also suggests that the plaintiff was negligent.

**4.** It is arguable that this passing reference to the jury instructions was insufficient. *See Simmons v. City of Philadelphia,* 947 F.2d 1042, 1066 (3d Cir.1991) (opinion of Becker, J.).

the plaintiff's factual arguments a few sentences earlier. Thus I see no basis for overturning the jury's verdict and the district court's judgment.