488 A.2d 1110

James **BASCELLI**

v.

**RANDY, INC., and Anthony D. Pierantozzi and Patricia R. Pierantozzi, Ind. and T/A East Coast Cycle Supply.**

**Appeal of RANDY, INC.**

Superior Court of Pennsylvania.

Argued July 11, 1984.

Filed Jan. 18, 1985.

Reargument Denied March 28, 1985.

Charles J. Bogdanoff, Philadelphia, for appellant.

Alexander A. DiSanti, Upper Darby, for appellees.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

WIEAND, Judge:

In this action to recover for personal injuries sustained in a one vehicle accident allegedly caused by the defective front end assembly of a motorcycle, the trial court excluded evidence of a post-accident admission made by the plaintiff-cyclist that the accident had not been caused by a defective motorcycle but by his loss of control while travelling at 100 miles per hour. A jury returned a verdict in favor of the cyclist and against the manufacturer for $1,750,000.00, on which judgment was entered following denial of post-trial motions. On appeal, we reverse and remand for a new trial.

On October 30, 1976, James Bascelli and Dana Tegler were driving their chopper-style motorcycles on Route 291, a four lane divided highway in Delaware County, when

Bascelli lost control of his vehicle. His motorcycle veered to the left, jumped the medial strip, crossed two lanes for oncoming traffic, and crashed into the guardrail. Bascelli testified that prior to losing control of his motorcycle he had been travelling at a speed of 35–40 miles per hour. He said, and his evidence tended to show, that the handlebar assembly had loosened and that this was what had caused his loss of control. As a result of the accident Bascelli sustained serious injuries, including the loss of most of his right arm and multiple fractures of his left forearm.

The front end assembly had been manufactured by Randy, Inc., the appellant. It consisted of a handlebar, two risers and two cap screws. The assembly was sold to Bascelli with a container of Locktite, a screw-locking compound, in October, 1972, by East Coast Cycle Supply.[1] It was thereafter assembled and installed by Bascelli on his Harley-Davidson motorcycle. The risers were attached to two prongs of a fork extending upwards from the front wheel by cap screws or bolts. Bascelli's evidence tended to show that at the time of the accident the left cap screw measured only one inch in length, this being one-half inch shorter than the right cap screw. He contended that the left screw was defective because it extended only two or three threads beyond the end of the fork into which it was intended to fit.[2] It was also alleged that the assembly contained a design defect because it did not include a locking device to prevent a loosening of the screws. Evidence was produced which tended to show that a disengagement of the screw from the fork had impaired Bascelli's ability to steer the motorcycle.

During pre-trial depositions, Anthony Pierantozzi, the retailer of the front end assembly, described a conversation which he and Bascelli had had several months after the

1. This was the fictitious name under which Anthony D. and Patricia R. Pierantozzi conducted a retail parts business in Delaware County.

2. The evidence was conflicting as to whether the two cap screws supplied with the assembly had been of unequal length. The manufacturer contended that Bascelli had used a screw different than the screws supplied by the manufacturer.

accident. In that conversation, according to Pierantozzi, Bascelli said that "nothing [had] really happened to the front end ..." and that the front end had begun to wobble and the bike had gone down while he was travelling at approximately 100 miles per hour. At trial, counsel for the manufacturer attempted to elicit Bascelli's admission from Pierantozzi to show that the accident had been caused by excessive speed and not because of a defective front end assembly. The trial court sustained an objection thereto because the evidence tended to show contributory negligence which, the court said, was irrelevant in a products liability case.

■ Before a manufacturer can be found strictly liable for damages caused by his product, it must be shown that his product was defective and that the defect was a substantial factor in causing plaintiff's injuries. *Sherk v. Daisy-Heddon*, 498 Pa. 594, 598, 450 A.2d 615, 617 (1982) (plurality opinion); *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 93–94, 337 A.2d 893, 898 (1975) (plurality opinion); *Swartz v. General Electric Co.*, 327 Pa.Super. 58, 66, 474 A.2d 1172, 1176 (1984). "The progress of the law in extending liability without fault to product suppliers [has not been] in disregard of fundamentals pertaining to the tort law of causation." *Oehler v. Davis*, 223 Pa.Super. 333, 334, 298 A.2d 895, 895 (1972).

■ In the instant case, the cause for Bascelli's losing control of his motorcycle was an issue of fact for the jury. An admission by Bascelli that he had lost control of the cycle while going 100 miles per hour was significantly relevant and extremely important evidence. It was admissible to show the cause of the accident;[3] to exclude it for that purpose was error.

■ Because the evidence was relevant to show the cause of the accident it could not properly be excluded, as the trial

---

3. The evidence was not offered to impeach the trial testimony of the witness by showing a prior inconsistent statement; and, therefore, we have not considered its admissibility for that purpose.

court seemed to think, because other evidence tended to show that the loosening of the front end assembly had caused the operator to lose control. This, as we have already observed, was an issue for the jury. Similarly, the evidence could not be excluded merely because it also tended to show "contributory negligence" on the part of the operator. It was admissible for the purpose of showing causation. See: *Greiner v. Volkswagenwerk Aktienge-selleschaft*, 540 F.2d 85 (3d Cir.1976) (evidence of drinking admissible to show causation); *Englehart v. Jeep Corp.*, 122 Ariz. 256, 260, 594 P.2d 510, 514 (1979) (evidence of plaintiff's intoxication, though not admissible to show con-tributory negligence, may be admitted on issue of proxi-mate cause); *Honda Motor Co. v. Marcus*, 440 So.2d 373 (Fla.Dist.Ct.App.1983) (failure to wear seat belt may be shown if it bore causal relation to injuries); *Scott v. Bolan Ford, Inc.*, 420 So.2d 1345 (La.Ct.App.1982) (intoxication admissible if relevant to causation); *Bendorf v. Volks-wagenwerk Aktiengeselischaft*, 90 N.M. 414, 416, 564 P.2d 619, 621 (N.M.Ct.App.1977) (negligence of plaintiff relevant if his wrongful driving was proximate cause of accident); *Caldwell v. Yamaha Motor Co.*, 648 P.2d 519, 527 (Wyo. 1982) (negligence of motorcyclist admissible if offered to prove causation or to impeach his testimony).

■ Appellee, hard pressed to justify the exclusion of this relevant evidence, argues that appellant's offer of proof was inadequate. This argument is lacking in merit. The record shows that as soon as appellant's counsel had asked Pierantozzi about a meeting with Bascelli, the latter's coun-sel asked for a side-bar conference, where he requested an offer of proof. When appellant's counsel referred to the testimony which Pierantozzi had given during pre-trial depo-sitions, he was interrupted before he had completed the offer of proof which Bascelli's counsel had requested. No sooner had appellant's counsel mentioned Bascelli's admis-sion that he had been going a hundred miles per hour than Bascelli's counsel interjected, "So what?". Appellant's counsel answered this interjected question by saying that

he wished to introduce Bascelli's admission of speed to show the cause of the accident. Bascelli's counsel argued that evidence of speed would be error because it would tend to show contributory negligence, which was not a defense to a claim resting on strict liability. The trial court agreed and sustained an objection to any such evidence despite a protest by appellant that evidence pertaining to the cause of the accident was being concealed from the jury.[4] The court's reason for sustaining the objection, as confirmed by subsequent opinion, was specifically its belief that the evidence was inadmissible because it tended to show that Bascelli had been guilty of contributory negligence.

The offer of proof, however, had contained a clear statement that Bascelli's admission of excessive speed was being offered to show the cause of the accident. Such an offer was certainly sufficient "to state the purpose [of the evidence] in a manner that the court [could] perceive its relevancy." *Societa Palmolese Di Protezione E Beneficenza v. Maiale*, 143 Pa.Super. 403, 407, 17 A.2d 925, 927 (1941). Accord: *Martin v. Johns-Manville Corp.*, 322 Pa. Super. 348, 356, 469 A.2d 655, 658 (1983), *appeal docketed*, 33 W.D. Appeal Dkt. 1984 (April 2, 1984). Thus, even though appellant's counsel was interrupted before completing his statement of the offer so as to include the entirety of Bascelli's admission, the trial court had enough informa-

---

4. The record discloses the following:

MR. BOGDANOFF: ... in this deposition he said that the plaintiff was in his place, the plaintiff told him at the time of this accident he was going a hundred miles an hour—

MR. RICHARD: So what?

MR. BOGDANOFF: —the jury is entitled to know the circumstances under which this accident happened to determine for themselves what the cause of the accident was.

MR. RICHARD: Your Honor, speed would be at best evidence of contributory negligence and nothing more and that would be the worst prejudicial error in this case.

MR. BOGDANOFF: The cause of the accident, sir, is being hidden from this jury in a systematic fashion by excluding each and every one of the issues dealing with why the accident happened.

. . . .

THE COURT: I will sustain the objection to this line of questioning. (N.T. 676–677).

tion to know that Bascelli had made an admission of a speed of 100 miles per hour and that this evidence was being offered to show the cause of the accident. When the trial court refused to allow the evidence for this purpose, it committed error. The evidence of excessive speed was not rendered inadmissible merely because it also tended to show contributory negligence on the part of the plaintiff.[5]

Appellant has asserted additional trial errors which also have merit. The evidence at trial showed that when the front end assembly had been sold to Bascelli, it had come with a container of Locktite. Appellant offered to show that the properties of Locktite were such that it was a recommended screw-locking device. The trial court refused to allow the evidence on grounds that it was irrelevant to the condition of the assembly when it left the manufacturer. This was error.

One who sells a product in a defective condition unreasonably dangerous is subject to liability for physical harm caused thereby if "it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." *Webb v. Zern*, 422 Pa. 424, 427, 220 A.2d 853, 854 (1966), quoting Restatement (Second) of Torts § 402A(1)(b) (1965). If a product is altered to make it safer after leaving the manufacturer but before reaching the consumer, the change is clearly relevant. In the instant case, the manufacturer was charged, inter alia, with defectively designing a product which lacked a locking device that would prevent a screw from being loosened by the jolting and bouncing to which a motorcycle would foreseeably be subjected. It was relevant, in view of this claim, to show that when the front end assembly had been sold

---

5. The author of the dissenting opinion suggests that our determination creates a second problem with respect to whether appellant's counsel could elicit Bascelli's admission from Pierantozzi by the use of leading questions. This is not an issue in the present appeal. Appellant's counsel was not permitted to inquire regarding Bascelli's admission by any questions whatsoever, leading or nonleading. Because it was not an issue in the trial court, it also is not an issue and has not been argued in this Court.

unassembled to the consumer, it was sold with a container of Locktite which, if properly applied, was calculated to lock the screw in place. The purpose for and the qualities of Locktite, therefore, were relevant facts for the jury to know in order to determine whether the front end assembly had been sold to the consumer in a defective condition. The evidence regarding Locktite was not rendered inadmissible merely because it had been supplied by the retailer rather than by the manufacturer. Contrary to the trial court's belief, the relevant time for determining whether the front end assembly was defective was the time when it reached the consumer, not when it left the manufacturer. See: *Lenkiewcz v. Lange*, 242 Pa.Super. 87, 91, 363 A.2d 1172, 1175 (1976); *Josephs v. Harris Corp.*, 677 F.2d 985, 987–988 (3d Cir.1982) (applying Pennsylvania law).

▮ It was also error to remove from the jury the issue of Bascelli's voluntary assumption of the risk. If either screw had been of inadequate length, this fact should have been readily observable by the person who installed the front end assembly and who inserted and tightened the screws. In this case, the front end assembly had been installed by Bascelli himself. He had previously worked in his father's machine shop and admittedly had been aware that bolts came in different sizes and were susceptible to disengagement because of vibration. It was arguable, therefore, that Bascelli had knowingly made use of an inadequate screw to install the front end assembly on his motorcycle. There was also evidence from which, if believed, a jury could infer that he had used Locktite only on one screw.

▮ In *Ferraro v. Ford Motor Co.*, 423 Pa. 324, 223 A.2d 746 (1966) the Supreme Court held unequivocally that if a buyer knows of a defect and voluntarily and unreasonably proceeds to use the product or encounter a known danger, this will constitute a defense to and preclude recovery in an action based on strict liability under Section 402A of the Restatement (Second) of Torts. *Id.*, 423 Pa. at 327, 223 A.2d at 748. Accord: *Berkebile v. Brantly Helicopter*

*Corp., supra* 462 Pa. at 100, 337 A.2d at 901. Although voluntary assumption of the risk must rest upon a subjective awareness of the defect, this awareness can be proved by circumstantial evidence sufficient to permit an inference that the user was aware thereof and understood the risk. *Weaver v. Clabaugh,* 255 Pa.Super. 532, 536, 388 A.2d 1094, 1096 (1978); Restatement (Second) of Torts § 496D, comment d (1965). "Whether the plaintiff knows of the existence of the risk, or whether he understands and appreciates its magnitude and its unreasonable character, is a question of fact, usually to be determined by the jury under proper instructions from the court. *The court may itself determine the issue only where reasonable men could not differ as to the conclusion."* Restatement (Second) of Torts § 496D, comment e (emphasis added).

This was not a case in which the issue of voluntary assumption of the risk could properly be taken from the jury and decided by the court. The issue should have been submitted to the jury upon proper instructions. There was evidence from which a jury could have inferred that Bascelli had voluntarily assumed a known risk or danger.

██ Because the case must be retried before another jury, we do not decide whether the amount of the verdict was excessive. Granting or refusing a new trial in the face of such an argument, it may nevertheless be observed, is within the discretion of the trial court whose exercise thereof will not be reversed in the absence of a clear abuse of that discretion. *Dougherty v. Sadsbury Township,* 299 Pa.Super. 357, 360, 445 A.2d 793, 795 (1982).

Reversed and remanded for a new trial. Jurisdiction is not retained.

OLSZEWSKI, J., files a dissenting opinion.

OLSZEWSKI, Judge, dissenting:

I respectfully dissent. The majority concludes that the offer of proof was "adequate". After reviewing the record and the briefs, I am constrained to disagree.

The offer when made must disclose all facts necessary to establish the admissibility of the testimony sought to be elicited. Further, the party making the offer must state its purpose in such a manner that the court may perceive its relevance. *Cockcroft v. Metropolitan Ins. Co.*, 133 Pa.Super. 598, 3 A.2d 184 (1938); *Hill v. Truby*, 117 Pa. 320, 11 A. 89 (1887); *see* Weinstein on Evidence Sec. 103(03) ("counsel must first be prepared to explain the substantive point before he can show that the proffered evidence is properly admissible as proof on that point."). It is no error to reject an offer of proof which fails to disclose the evidence is competent. *Zubrod v. Kuhn*, 357 Pa. 200, 53 A.2d 604 (1947).

It seems clear from the record before us that appellant's offer failed of its essential purpose. The lower court in its opinion stated:

> In addition the Defendant contends that it was precluded from showing that Plaintiff also admitted to Mr. Pierantozzi that there was nothing wrong with the motorcycle and that he simply lost control of the cycle. The record clearly shows that the offer of proof for Randy, Inc. was simply to elicit testimony from Mr. Pierantozzi that the Plaintiff allegedly admitted to him that he had been travelling 100 m.p.h. at the time of the accident. No mention was made of anything else in this offer of proof.

As plaintiff explained, speed as evidence of contributory negligence "would be the worst prejudicial error in this case."

I note that appellant nowhere introduced or attempted to introduce the deposition into evidence. Nor did he explain that he wanted testimony of speed not to show contributory negligence but rather to establish an independent cause for the accident. Admission or exclusion of evidence lies within the sound discretion of the trial judge. Finding no abuse of that discretion, I would dismiss appellant's first claim.

In rejecting the claim, I am mindful of the important ends served by an offer of proof. Backlogged courts should not be required to repeat trials, especially civil trials, because

counsel has failed to make his position clear for the record. The fact that appellant lays out the argument for the first time on appeal does not excuse his failure to present it at trial.

A second problem follows the majority's resolution of appellant's first claim. The majority assumes without deciding that one defendant, under guise of cross-examination of a co-defendant, may establish a defense common to both. Counsel for defendant East Coast Supply had called Pierantozzi to the stand. When he concluded, appellant's counsel questioned the witness. Our Supreme Court has held that prejudicial error results when counsel for one defendant is permitted to introduce a defense, common to both, through leading questions directed to another defendant who is, in fact, part and parcel of the same cause. *In re Rogan Estate*, 404 Pa. 205, 171 A.2d 177 (1961). "The fact that it was counsel for a defendant, other than the party-defendant being interrogated, is of no moment. The substantialities of the situation must be considered, not mere technicalities." *Id.*, 404 Pa. at 215, 171 A.2d at 181.

With respect to the remaining issues, I adopt the thoughtful and well-reasoned opinion of the Honorable William Toal, Jr.

I would affirm the order of the court below.