Helen **KOLESAR**, Individually and as Administratrix of the Estate of John M. Kolesar, deceased, Plaintiff,

v.

**NAVISTAR INTERNATIONAL TRANSPORTATION CORP.**, formerly known as International Harvester Company, Defendant.

Civ. No. 90–2155.

United States District Court, M.D. Pennsylvania.

Aug. 31, 1992.

This action was commenced by the plaintiff individually and as administratrix of her husband's estate. The action seeks damages for strict liability under Section 402A of the Restatement (Second) of Torts on a theory of "crashworthiness."[1]

The pertinent history is that the decedent was operating an agricultural tractor manufactured by the defendant in January 1967. At the time of its manufacture and sale, the tractor was not equipped with any roll-over protection or seat belts (ROPS), and it was not so equipped at the time of the accident on July 3, 1990. On that date, while towing two empty haywagons, decedent was exiting a township dirt road onto a state rural paved road. In turning onto the state road, the tractor upset or rolled over laterally resulting in the decedent being pinned to the ground by the weight of the tractor. He was found dead.

Plaintiff claims the tractor was defective in design because it was not equipped with ROPS. She does not claim that the defect in design caused the decedent to lose control of the tractor. Rather, plaintiff claims that had the tractor been equipped with ROPS at the time of the accident her husband would have walked away from the accident uninjured. In this context, she proceeded against the manufacturer under a "crashworthiness" theory. While other claims were made in the complaint, all were withdrawn before trial.

Laurence M. Kelly, Montrose, PA, for plaintiff.

Edward A. Gray, George J. Lavin, Jr. Associates, Philadelphia, PA, C.G. Norwood, Jr., New Orleans, LA, Robert J. Hafner, Lavin, Coleman, Finarelli & Gray, Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

KOSIK, District Judge.

This matter is before the court on the plaintiff's motion for a new trial.

Following trial and deliberation over a number of jury questions, the jury returned its verdict by responding in the negative to the first question which asked them if plaintiff had sustained her burden of proof in establishing that the tractor was defective in design without the ROPS.

Plaintiff filed a motion for new trial assigning eight alleged trial errors; one allegation containing eleven sub-parts. Not all of the errors were briefed. Accordingly, we will only address those briefed by both sides.

---

1. Although the Pennsylvania Supreme Court has not had the opportunity to adopt or repudiate the crashworthiness doctrine, the Third Circuit has predicted that it would adopt the doctrine, and, therefore, the doctrine is applicable in federal court to cases governed by Pennsylvania law. *Habecker v. Clark Equipment Co.*, 942 F.2d 210, 214 (3d Cir.1991); *Roe v. Deere and Co.*, 855 F.2d 151, 153 n. 2 (3d Cir.1988); *Huddell v. Levin*, 537 F.2d 726 (3d Cir.1976).

## I.

Plaintiff claims defense counsel substantially prejudiced the plaintiff with his closing remarks to the jury which are prohibited in a crashworthiness case. Plaintiff has singled out the objectionable remarks and the court's ruling:

MR. NORWOOD: It was not an automobile, It was not a motorcycle. It was not—it was not a bulldozer intended for use in the forest where you're plowing up trees. It was designed like this, as an open tractor, a conventional tractor. And it's obvious that it didn't have a cab. It might be safer with a cab. You might be engaged in agricultural production in some fashion where it was important to keep things from falling on you. For example, you might need a cab. It could be made safer with a cab. There may be certain circumstances where a cab would not be very good to use. You might be in bars or low—

MR. KELLY: Objection, your Honor. This is beyond the scope of the case. This is a crashworthy case, and I submit that his argument is beyond that and I object.

THE COURT: The objection is overruled. Continue.

(Continuation of closing statement to the jury by Mr. Norwood).

MR. NORWOOD: But the simple point is, you are judging the tractor for what it is, not what it might have been. When John Kolesar bought this tractor in 1984, that tractor was 17 years old. He did not buy a new tractor. He did not apparently want or perhaps afford a new tractor. He did not buy a tractor with a cab, because he didn't want one with a cab.

MR. KELLY: Your Honor, I'm going to object again and remind him that this is a crashworthy case. The issue in this case is whether or not it's crashworthy.

THE COURT: That part I'll sustain.

(Continuation of closing statement to the jury by Mr. Norwood.)

MR. NORWOOD: My point is, the tractor has to be judged for what it was and what it is.

MR. KELLY: And I object again, the tractor has to be judged as to whether it's crashworthy or not, and I object to this whole line of argument.

THE COURT: Overruled. I sustain a part of your objection and overrule the other part.

(Continuation of closing statement to the jury by Mr. Norwood.)

MR. NORWOOD: Ladies and gentlemen, the judge will tell you that a manufacturer is not charged with the responsibility of making everything as safe, whatever that means, as it could be. Because if that was true, none of us could choose to buy automobiles that don't have tops, as we do; none of us could choose to ride motorcycles if we want to. A motorcycle is not crashworthy, but it is a motorcycle.

A tractor of this type, and this is our point, is exactly what it was sold to be. And its condition is obvious. If you looked at this tractor in a show room, and you went to the dealer in 1984, whenever you went to buy it, you would know what it is. I submit to you that in applying your judgment, as the court will give it to you, to this tractor, to say it is defective because the manufacturer did not mandate the attachment of ROPS to the tractor, any more than it did not mandate or force people to buy cabs, it is wrong. You can't say that the tractor was defective.

MR. KELLY: I object again, your Honor. I submit that this violates about three or four paragraphs of the motion in limine.

THE COURT: Listen, objection is overruled.

(Continuation of closing statement to the jury by Mr. Norwood.)

MR. NORWOOD: I think I've made my point and I'll move on. When you go to the jury room and you judge the design of this tractor, remember that you're judging the tractor as it was built in '67, and it was bought in 1984.

Navistar and its predecessor, International Harvester, do not assert ROPS are bad things. They are good things. There is no question about it. It does not assert that total enclosures of cabs is a good thing or a bad thing. It is in most cases a good

thing. There is no argument about that. We're not arguing that it was feasible to attach ROPS to the tractor. That is not a problem. It could be done. [N.T. 15–17].

By way of background it should be noted that prior to hearing any evidence in this case the court favorably ruled on plaintiff's motion in limine which sought to preclude the defense from offering evidence that ROPS were available for the tractors as an option, and that the use or nonuse of ROPS by others was not relevant. Consistent with these rulings we sustained plaintiff's objection to that portion of defense counsel's argument that stated "he did not buy a tractor with a cab, because he didn't want one with a cab." We overruled plaintiff's other objections because in the context of the closing remarks defense counsel was addressing the issue of "marketability" which the Third Circuit Court of Appeals recognized as an appropriate subject in a crashworthiness case when considering what duty a manufacturer owed the user of its product. In *Huddell v. Levin*, 537 F.2d 726 (3d Cir.1976) which first addressed crashworthiness in our Circuit, the Court stated:

> We take it as beyond peradventure that an automobile manufacturer today has some legal obligation to design and produce a reasonably crashworthy vehicle. The manufacturer is not required to design against bizarre accidents; the manufacturer is not required to produce an accident-proof vehicle. But the manufacturer is required to take reasonable steps—within the limitations of cost, technology, and marketability—to design and produce a vehicle that will minimize the unavoidable danger.... [T]he manufacturer must consider accidents as among the 'intended' uses of its product.

> 537 F.2d at 735.

This language was adopted in *Habecker v. Clark Equipment Co.*, 942 F.2d 210, 214 (3d Cir.1991) after restating the three elements which are part of a plaintiff's burden of proof in a crashworthiness case. The court in our case so charged the jury by adopting the language of the defendant's point for charge No. 25 without objection from plaintiff.

## II.

Plaintiff next claims the court erred when it instructed the jurors that while the contributory negligence of plaintiff has no place in the litigation or the jury's considerations, the conduct of the plaintiff in the manner in which he operated the tractor may be considered in assessing causation of the injury in a crashworthiness case.

In its charge the court generally instructed that neither the negligence of the defendant nor the contributory negligence of the plaintiff were issues and should be given no consideration in the deliberations of the jury. The judge then specifically reiterated the instruction, but stated that the conduct or manner of operation may be considered in assessing causation of the death. At the time, this instruction was given at the request of the defense in points for charge Nos. 34 and 35, on the authority of *Foley v. Clark Equipment Co.*, 361 Pa.Super. 599, 523 A.2d 379 (1987), *Alloc. denied* 516 Pa. 614, 531 A.2d 780 (1987), and *Bascelli v. Rundy, Inc.* 339 Pa.Super. 254, 488 A.2d 1110 (1985). The trial evidence which prompted the charge allowed the jury to conclude that the deceased was not operating the tractor in a lawful or proper manner. The jury could conclude that the tractor, while pulling two empty hay wagons down a dirt township road with a 10% to 11% grade, may have gone through a stop sign and made a sharp right turn onto a macadam road. In the turn, the tractor rolled over and ended up against a tree along the macadam road. There was evidence that the tractor was proceeding at a speed of 13 to 14 miles per hour, and that there were 28 feet of skid or "yaw" marks made by rotating tires which, according to plaintiff's expert, indicate that the brakes were not applied.

In attempting to preclude the above evidence at trial, plaintiff's motion in limine stated that the conduct of decedent represented a foreseeable use of a tractor which could not be offered on the issue of causation absent a showing of recklessness, citing *Gottfried v. American Can Co.*, 339 Pa.Super. 403, 489 A.2d 222 (1985). The defense position was that the decedent's conduct was not an intended use foreseeable to a manufacturer.

Since the trial in this case the Third Circuit Court of Appeals decided *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430 (3d Cir.1992), where two judges concluded that where evidence of the plaintiff's conduct is tantamount to contributory negligence, it is inadmissible under Pennsylvania law despite any relevance to causation. In doing so the court rejected the reasoning of *Foley, supra,* on the ground that it did not reflect the approach taken by the Pennsylvania Supreme Court in other cases. However, the court did not similarly reject the reasoning in *Gottfried* concerning evidence of a plaintiff's reckless conduct, or the holdings in *Bascelli, supra,* where plaintiff's negligent conduct directly contributed to causing the accident.[2]

We do not believe *Dillinger* controls here. In that case, although the plaintiff's conduct did not actively cause his injuries, the trial court permitted the evidence on the authority of *Foley* and *Bascelli* even though the evidence tended to show contributory negligence. The appellate court in rejecting the holding in *Foley,* went on to distinguish *Bascelli* after acknowledging that its task of reconciling some of the decisions with the Pennsylvania Supreme Court's declarations was in some instances futile. The *Dillinger* majority distinguished *Bascelli* because unlike *Dillinger,* plaintiff's conduct in *Bascelli* actively contributed to the cause of the accident. In *Dillinger,* plaintiff's conduct was merely insufficient to prevent the accident attributable to the defect. Next, the conduct of plaintiff in *Bascelli* was reckless as opposed to ordinary negligence, which is generally prohibited. The court held that the reckless conduct was akin to evidence that plaintiff misused a product which is admissible in a Section 402A proceeding in Pennsylvania. In this regard, the defense in our case argued that the decedent's conduct in the operation of the tractor was not an intended use. In conjunction with the burden of proof required in a crashworthiness case, the court charged, without objection, that the manufacturer is not responsible for extraordinary risks an operator or user may choose to take. Further, that an intended use of the product was one reasonably foreseeable to the manufacturer.

While we conclude that *Dillinger* is inapposite in the circumstances of this 402A case, we venture to conclude that *Dillinger* would have to be distinguished in any crashworthiness case where plaintiff concedes that the defect in the product did not cause the accident, but increased the severity of the injury over that which would have occurred absent the defective condition. Indeed, plaintiff had the burden of proving the extent of enhanced injuries attributable to the defective design. A crashworthiness case necessarily implicates a consideration of other causes, including the conduct of the plaintiff as a cause of the injury. Such evidence cannot be excluded merely because it also tends to show contributory negligence.

We also deem it significant that in this case the jury responded "no" when asked if the plaintiff sustained her burden of proof in establishing that the tractor was defective in design when manufactured without ROPS. Presumably, the jury did not reach the subject of decedent's conduct.

### III.

The last point we address is whether the court erred in the manner in which it responded to a jury question posed during deliberations.

The jury asked: "Is it possible to know what the law was regarding rollbar requirements in 1967 on tractors, especially 806 Type Tractors?" After reading the question to counsel, the court invited comment, as well as a possible consensus, in responding to the question.

Counsel for the defendant pointed out that the court granted plaintiff's motion in limine to exclude any references to industry standards or custom on ROPS, or any evidence suggesting a duty of retrofitting the tractor with ROPS. He argued that there is no law requiring ROPS, and that there was no evidence of this because it was precluded by the court. Plaintiff's counsel argues that while there may not have been a law on the subject it would be unfair to tell the jury that there was no law requiring ROPS. Plaintiff's counsel sought to have the court reiterate that we had already charged on the applica-

---

2. Although *Dillinger* was decided on February 25, 1992 after plaintiff's motion for a new trial was briefed, the court invited counsel to supplement their briefs.

ble law. Of course, this was not the inquiry made by the jury. Without a consensus, and based on experience, the court answered: "There is no evidence in this case telling us the answer to your question. We can only answer questions with answers from the evidence." Since we precluded the evidentiary introduction of any references to such laws or regulations, we believe the court's response was neutral and appropriate. In considering the charge in its entirety, we do not believe the jury was misled.

For the reasons stated we will deny the motion for a new trial.

SO ORDERED.