McKEE, Circuit Judge,
concurring:
I join Judge Cowen’s opinion. However, I write separately to state my understanding of whát we hold today, and to comment upon the problems I perceive in the approach taken by our colleague, Judge Greenberg. In my view, that approach opens the door that the Pennsylvania Supreme Court closed in Azzarello v. Black Brothers Co., 480 Pa. 547, 391 A.2d 1020 (1978), and beckons comparative fault to reenter discussions of strict liability. Any discussion of strict liability must adhere to the policy considerations endemic to § 402A of the Second Restatement of Torts. As we noted in Dillinger v. Caterpillar, Inc., 959 F.2d 430 (3d Cir.1992) in our discussion of Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 337 A.2d 893 (1975):
The law of products liability developed in response to changing societal concerns over the relationship between the consumer and the seller of a product. The increasing complexity of the manufacturing and distributional process placed upon the injured plaintiff a nearly impossible burden of proving negligence where, for policy reasons, it was felt that a seller should be responsible for injuries caused by defects in his products.
959 F.2d at 435 (citation omitted).
Judge Greenberg reads our decision in Dillinger as precluding “injection]” of “negligence principles in strict liability actions” only in those circumstances where the plaintiffs conduct “exacerbated or failed to prevent an injury caused by the defect.” Dissent at 1342. Judge Greenberg also states that the law of Pennsylvania does not preclude consideration of a plaintiffs conduct where that “conduct ... caused an accident independently of the defect in the product.” Dissent at 1342. However, Judge Greenberg over simplifies the range of causes that typically lie behind an injury. In most cases (including those relied upon by Judge Green-berg) a reasonable fact finder could conclude that the injury resulted from a combination of plaintiffs conduct and the challenged defect. Judge Greenberg’s analysis would seem to permit the use of plaintiffs conduct in these cases. However, I think that neither our previous decision in Dillinger nor our decision today allows principles of contributory negligence to govern a dispute merely because “plaintiffs conduct set the events leading to the accident in motion” as Judge Greenberg believes. Dissent at 1342.
Judge Greenberg relies upon Bascelli v. Randy, Inc., 339 Pa.Super. 254, 488 A.2d 1110 (1985), and Gallagher v. Ing, 367 Pa.Super. 346, 532 A.2d 1179 (1987) and our discussion of them in Dillinger to support his conclusion that we have barred evidence of plaintiffs conduct only in situations where that conduct exacerbates an injury caused by the defect, or failed to prevent an injury caused by it, and not where the conduct causes an injury independent of the defect. Clearly, one can not be held liable in a strict liability action unless the claimed defect actually caused the injury. In other words, the defect must have been “a substantial factor in bringing about the harm.” Powell v. Drumheller, 539 Pa. 484, 653 A.2d 619, 622 (1995), see dissent at 1341. However, plaintiffs conduct is not relevant to this inquiry simply because such conduct may have also contributed to the injury. Before plaintiffs conduct can be admitted it must be viewed in context with the societal policies that lie behind strict liability and that assist in determining causation under Dillinger.
In Bascelli, the Pennsylvania Superior Court did hold that evidence that the plaintiff had been driving a motorcycle 100 miles per hour was relevant to establish causation, and could not be excluded merely because it also intended to show contributory negligence. *1339 488 A.2d at 1113. However, as we noted in Dillinger, Bascelli no longer provides us with guidance. In deciding Bascelli, the Pennsylvania Superior Court cited Greiner v. Volkswagenwerk Aktiengeselleschaft, 540 F.2d 85 (3d Cir.1976) which, as we noted in Dillinger, was decided prior to Azzarello, supra, wherein the Pennsylvania Supreme Court “significantly broadened the scope of liability under § 402A.” Dillinger, 959 F.2d at 442. In Dillinger we did state the following:
Of more significance, the plaintiffs conduct in Bascelli actively contributed to the cause of the accident, while [plaintiffs] conduct in this ease was merely insufficient to prevent the accident attributable to the defect of the [product]. Thus, here the evidence was compelling that the defect which resulted in the hose damage, rather than [plaintiffs] conduct, triggered the accident.
959 F.2d at 442.
That statement, however, is best understood when viewed in context with the policy repercussions of ignoring conduct which, though foreseeable, is so unreasonable as to not justify finding the manufacturer liable even though the manufacturer is deemed to be the “guarantor” of its products.[1] I submit that had Bascelli been exceeding the speed limit by only 5 miles an hour rather than rocketing through space at 100 miles per hour his conduct would not have been relevant to determining if the alleged defect (as opposed to his own behavior) was responsible for his loss of control. However, his conduct was so outrageous that it amounted to assumption of the risk, misuse of the product, and highly reckless conduct. In Dillinger we hypothesized that all three of those theories continue to be permissible defenses in a § 402A proceeding. 959 F.2d at 445-46. I believe that absent conduct which is so outrageous as to fall into one of those three categories the policy considerations that hold a manufacturer liable as a guarantor of its product control. However, once the plaintiffs conduct becomes so unreasonable and extraordinary as to amount to either assumption of the risk, misuse of the product, or highly reckless conduct, that conduct becomes relevant to causation as society has no interest in protecting such plaintiffs from the consequences of that kind of irresponsibility. Moreover, it is unjust to shift the cost of such injury from the person whose outrageous conduct caused it (or contributed to it) to the manufacturer who will in turn pass that cost on to innocent consumers.
This policy concern is written into the law of strict liability through the mechanism of causation. Accordingly, we observed in Dillinger:
[t]he ... issue of causation is raised when the plaintiffs action is so reckless that the plaintiff would have been injured despite the curing of any alleged defect, or is so extraordinary and unforeseeable as to constitute a superseding clause.
959 F.2d at 446 (internal quotations omitted) (internal citations omitted).
In Pennsylvania, products liability law “shift[s] the loss to the party who can most easily bear it.” Staymates v. ITT Holub Industries, 364 Pa.Super. 37, 527 A.2d 140, 143 (1987). However, this general policy does not operate where it would cause an inappropriate or unjust result. Gallagher v. Ing, 367 Pa.Super. 346, 532 A.2d 1179 (1987) (cited by Judge Greenberg), is another example of this. There, the administratrix of the deceased driver of an automobile sued the manufacturer of the automobile alleging that a design defect had caused the decedent driver to lose control in a fatal car crash. The evidence that was produced at trial established that, at the time of the accident, the driver had a blood alcohol content of .18 percent. The jury was allowed to consider that evidence as it tended to establish that the decedent was “unfit to drive a vehicle safely,” 532 A.2d at 1181, and that the intoxication; not the alleged defect, caused the accident. The Pennsylvania Superior Court noted that such evidence was appropriate, not because it established intoxication per se, *1340 but because it established intoxication to the extent of rendering the decedent unfit to drive. The court noted that the defendant had produced evidence that the decedent had been drinking scotch for a period of approximately 1-1/2 hours before driving his ear home and that some witnesses had observed that he had been “driving at a high rate of speed on a dark, winding and hilly road approximately one mile from the scene of the accident.” Id. at 1182. The manufacturer had also produced expert testimony as to the ability of someone with a blood alcohol concentration of .18 percent to safely operate a ear. On appeal the court noted that with a blood alcohol level that high,
virtually every person, adult or child ... is markedly impaired with respect to ... judgment, the response time, ... the coordination ... all of these things are progressively and markedly impaired ... forensic toxicologists and everybody else says that this kind of a blood alcohol level, a person’s likelihood of being involved in a fatal accident is over 20 times greater than that of a sober person ... He can still drive ... but not safely.
532 A.2d 1182-83. Accordingly, the evidence was properly admitted to show that the decedent was “incapable of driving safely and that this was the legal cause of his loss of control of the vehicle he was driving.” Id. at 1183.
Thus, Gallagher does not support Judge Greenberg’s position to the extent that might at first appear although he correctly notes it as an example of a case where a plaintiffs conduct did set the events leading to the accident in motion. See dissent at 1342. In theory, the conduct in Gallagher would have set the events leading to the accident in motion had the evidence shown marginal impairment or that the driver had exceeded the speed limit by 5 miles per hour. Yet, I do not believe that in those situations a jury could consider plaintiffs conduct on the issue of causation — even if a manufacturer could show that had the plaintiff not been exceeding the speed limit, or not been slightly impaired, the particular defect would not have been sufficient by itself to cause loss of control. Few among us can honestly state that he or she has never exceeded a posted speed limit. That eventuality is most certainly foreseeable. Yet, that circumstance will not constitute an“intervening cause” and therefore justify consideration of plaintiffs conduct in a strict liability action unless that conduct rises to such a level as to constitute assumption of the risk, misuse of the product, or highly reckless conduct. See Dillinger, supra. This is so even though plaintiffs conduct “set the events leading to the accident in motion.” Thus, Judge Greenberg reads too much into the holding of Gallagher. Moreover, the discussion in Gallagher focused upon the reliability of the blood test, and the propriety of admitting evidence of intoxication in view of its propensity to generate bias. There is almost no discussion of the strict liability and causation issue that we address here. The court’s entire discussion of strict liability is at the very end of the opinion and is, in its entirety as follows:
Appellant also argues that the trial court erred in, ... (3) allowing appellee’s counsel after ruling that comparative negligence principles had no application,to suggest to the jury that the defendant’s negligence was the sole cause of the accident. We have examined these contentions carefully and conclude that they have been adequately analyzed and properly decided by the trial judge. Suffice it to say that appellant’s contentions are lacking in merit and do not warrant a new trial.
532 A.2d at 1185.
In summary, I believe Judge Cowen correctly summarizes the state of Pennsylvania law under § 402A of the Restatement. Evidence of the decedent’s actions in the instant ease is appropriate only if a jury determined that such actions were “not reasonably foreseeable or were otherwise extraordinary.” Majority Op. at 1336, (emphasis added). I do not feel that Judge Greenberg’s analysis allows for any meaningful distinction between circumstances where plaintiffs conduct becomes relevant to causation, and those where it is precluded by policy considerations that drive the doctrine of strict liability as enunciated by the Pennsylvania courts. If the alleged defect was “a substantial factor in bringing about the harm,” ab *1341 sent assumption of risk, misuse of product, or highly reckless conduct, it is irrelevant whether plaintiffs conduct set the events in motion or merely faded to prevent an injury, and I do not read our decision in Dillinger to the contrary.

. As we noted in Dillinger:
The [supplier] of a product is the guarantor of its safety. The product must, therefore, be provided with every element necessary to make it safe for [its intended] use, and without any condition that makes it unsafe for [its intended use].
959 F.2d at 436 (brackets in original).