Anne K. WILSON and Oliver J. Larmi, Plaintiffs,

v.

**VERMONT CASTINGS,**
**et al., Defendants.**

No. 4:CV–93–1724.

United States District Court,
M.D. Pennsylvania.

Sept. 23, 1997.

Howard K. Goldstein, Andrew S. Kessler, Goldstein & Kessler, Philadelphia, PA, for plaintiffs.

Patrick C. Carey, Janine M. Torda, Fine, Wyatt & Carey, Scranton, PA, for defendants.

### *MEMORANDUM*

McCLURE, District Judge.

## BACKGROUND

Plaintiffs Anne Wilson and Oliver J. Larmi filed this diversity action[1] to recover for injuries sustained by Wilson on November 16, 1991 while she was lighting a fire in a woodburning stove sold by defendant Vermont Castings, Inc. (Vermont Castings). Wilson suffered severe burns when her clothing caught fire. Plaintiffs alleged causes of action in strict liability (Count I) and negligence (Count II) and asserted claims for loss of consortium (Count III) and punitive damages (Count IV).

Plaintiffs filed this action against Vermont Castings, the company which sold the stove, and Pacificorp, a west coast utility company.[2] Joined as third party defendants were various parties associated with the sale or manufacture of the dress Wilson was allegedly wearing at the time of the incident. The third party defendants were dismissed from the case during trial.

Trial commenced on February 12, 1997 and concluded on March 7, 1997 with a verdict in favor of defendant Vermont Castings.

Plaintiffs proceeded to trial on a strict liability theory of liability only. The jury found that the stove was defective but that such defectiveness was not a substantial factor in causing injury to plaintiff Anne Wilson.

Before the court is a motion for a new trial filed by the plaintiffs. For the reasons which follow, the motion will be denied.

## DISCUSSION

### Allegations of juror misconduct

Plaintiffs raise allegations of juror misconduct. They assert that during conversations post-trial between plaintiffs' counsel and jurors, counsel learned that: 1) a juror who owns a Vermont Castings stove reviewed the instruction manual to see what warnings were given and told other jurors what she had found; and 2) that the same juror told the other jurors, that she, like Wilson, found it was necessary to leave the door open slightly to get the fire going.

█ We start with the general rule that jurors may not impeach their own verdict and are not competent to testify about any

---

**1.** 28 U.S.C. § 1332.

**2.** Plaintiffs originally brought this action against VCI Acquisition Company (VCI) as well. VCI was dismissed as a party defendant pursuant to stipulation of the parties (record document nos. 15 and 16).

aspect of their thought processes or deliberations. *In re Beverly Hills Fire Litigation,* 695 F.2d 207, 213 (1982). Any inquiry into the deliberative process or juror's mental process is impermissible under Federal Rule of Evidence 606(b). With one exception, Rule 606(b) precludes jurors from testifying about what occurred during deliberations. Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, **except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.** Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b) (Emphasis supplied).

The exception is, as stated in the rule, that a court may inquire as to whether "extraneous prejudicial information was improperly brought to the jury's attention." *Id.* See also: *Womble v. J.C. Penney Company, Inc.,* 431 F.2d 985, 989 (6th Cir.1970). There has been much debate as to what constitutes "extraneous information."

Some courts and commentators have favored a definition that focuses on the physical location of the juror, stating that any influence which comes to bear outside the jury room door may be inquired into, and any influence which comes to bear inside the jury room is sacrosanct. Others have focused, not on the physical location, but on the importance of barring any inquiry into the jury's deliberative process.

■ The debate is reflected in the Advisory Committee Notes for Rule 606 with the House and Senate favoring different versions of proposed amendments to Rule 606(b) in 1974. The version ultimately adopted favors drawing the dividing line between permissible and impermissible inquiry at the point where the jury's mental processes during deliberation would be revealed. That is, jurors may be asked whether any extraneous material or information was brought to their attention.[3] Whether the extraneous material or information originated inside or outside the jury room is immaterial.

■ If jurors indicate that extraneous information was brought to their attention, the court cannot then inquire as to whether and to what extent such information affected their deliberations. Under Rule 606(b), jurors are competent to testify as to external influences upon them. *Beverly Hills,* 695 F.2d at 213 and *Womble,* 431 F.2d at 989.

> This exception permitting inquiry into external influences upon the jury, however, is limited to identification of those extraneous sources of information—**once the existence of external influences upon the jury has been established, neither the Court nor counsel may inquire into the subjective effect of these external influences upon particular jurors. Rather, the Court must determine whether such extraneous information was prejudicial by determining how it would effect [sic] an objective "typical juror."**

*Urseth v. City of Dayton,* 680 F.Supp. 1084, 1089 (S.D.Ohio 1987), citing, *inter alia, Owen v. Duckworth,* 727 F.2d 643, 646 (7th Cir. 1984).

Rather, it is the court's obligation then to determine whether there was reversible error, by deciding whether such information would have affected an objective "typical juror" and led him or her to a verdict based even in part on impermissible considerations or inadmissible evidence.

Here, we will accept for purposes of deciding the motion before us that the representations made by counsel as to statements obtained from a juror are correct. We further find, for purposes of resolving plaintiffs' ob-

---

**3.** A hearing may be held for this purpose.

jection, that the information relayed to the jury by a particular juror about her Vermont Castings instruction manual was extraneous to the jury's deliberations, since it was not part of the evidence in the case.[4]

■ The testimony as to how this particular juror routinely operated her stove was, however, not extraneous to the process. Jurors bring with them to deliberations their life experiences. When such information becomes part of the deliberative process, it becomes sacrosanct under Rule 606(b). This is not a situation in which a juror went out on his or her own, performed an experiment for the express purpose of testing the evidence, then relayed the results to the other jurors. This was simply a matter of a juror drawing upon prior life experiences and using them in the course of deliberations. It would, therefore, be improper for us to inquire further into the matter.

■ We do find, however, that a limited inquiry permitted under Rule 606(b) is appropriate with respect to the statement that the same juror took it upon herself to review the instruction manual and report what she found to the jury. This was not simply a prior life experience she simply drew upon in deliberating, but rather something she did expressly, using materials available to her only outside the courtroom, for the purpose of testing or evaluating the evidence.

Plaintiffs' theory of product defect was twofold: 1) that the stove was defectively designed because users had to leave the door slightly ajar to keep the fire going and 2) that the stove was defective because there were no warnings placed on the stove itself telling users not to leave the door ajar because it posed a risk to those nearby.

Jurors were asked to answer two questions on liability:

1) Was the Defiant wood-burning stove defective when manufactured and sold by defendant Vermont Castings?; and

2) Was the defectiveness of the stove a substantial factor in bringing about harm to plaintiff Anne Wilson? They answered the first question "yes" and the second "no."

■ The information in the manual went only to the issue of defect. It had no bearing on the issue of causation. Unlike issues of product defect, all causation issues in this case turned on facts relating to plaintiffs' actions and other events the day of her tragic accident. Nowhere in the case was there any suggestion that plaintiff Wilson looked at the manual that day or any other day prior to the accident. Thus, whatever the manual said was irrelevant to the issue of causation, the only liability issue on which plaintiffs did not prevail.

More to the point, plaintiffs suffered no prejudice even if the jurors' consideration of information in the manual was improper. As we have stated, plaintiffs prevailed on the question of product defect. That was the only issue in the case on which information in the manual had any bearing. Thus, even if we assume, *arguendo*, that the verdict was improperly influenced by information on the manual not admitted into evidence, plaintiffs suffered no prejudice as a result. Parties are not entitled to a reversal or a new trial on grounds that caused them no prejudice.

Although Rule 606(b) allows the court to hold an evidentiary hearing, no purpose would be served by holding a hearing on this issue. We have before us, and will accept, the information obtained by plaintiffs regarding what the juror did and what she told her fellow jurors about the manual. If we were to hold a hearing, the information obtainable could not go beyond those facts without violating Rule 606(b). Rule 606(b) allows only an inquiry as to what extraneous information was before the jury. Any inquiry beyond such facts into what effect the information had on deliberations remains barred. Fed. R.Evid. 606(b). See, e.g., *Owen v. Duckworth*, 727 F.2d 643 (7th Cir.1984).

Further, if there are shown to have been extraneous influences on the jury, it becomes the obligation of the court to apply an objec-

---

4. Evidence as to the contents of the manual was excluded on grounds of relevancy. The testimony indicated that Anne Wilson had never seen the Vermont Castings manual. As we discuss *infra*, the evidence was, in fact, excluded upon motion of defendant Vermont Casting, not at plaintiffs' urging.

tive test and assess for itself whether the information would have affected an objective "typical juror." As we stated above, inquiry into the mental processes of a particular juror or jurors during deliberations remains improper. *Urseth v. City of Dayton,* 680 F.Supp. 1084, 1089 (S.D.Ohio 1987) (collecting cases). "The court's questioning of a juror who is the recipient of extraneous information is limited to the circumstances and nature of the improper contact." *United States v. Simpson,* 950 F.2d 1519, 1521 (10th Cir.1991), quoting *United States v. Hornung,* 848 F.2d 1040, 1045 (10th Cir.1988), *cert. denied,* 489 U.S. 1069, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989).

"Where an extraneous influence is shown, the court must apply an objective test, assessing for itself the likelihood that the influence would affect a typical juror." *Id.* at 1522, citing *United States v. Bassler,* 651 F.2d 600, 603 (8th Cir.1981). Here, it was plaintiffs' contention that the warnings should have been on the stove itself. The jury apparently agreed with the plaintiffs on that point in finding the stove defective.

Finally, we have to note that plaintiffs' entire argument on this issue is disingenuous. It was Vermont Castings which, prior to trial, moved to preclude evidence that the warnings set forth in pamphlets and other materials which accompanied the Vermont Castings stove when it was sold were defective in failing adequately to warn the user of the hazards associated with the use of the stove. The basis for Vermont Castings' motion was Wilson's testimony that she never reviewed any such materials.

That motion was opposed by plaintiffs, who argued for the inclusion of such evidence so that they could assert a theory that such warnings, instructions, manuals, etc. were inadequate and the product therefore defective. The court agreed with Vermont Castings and excluded the evidence on grounds of relevancy, Fed.R.Evid. 401, stating that whatever information was contained in, or omitted from, manuals and pamphlets the plaintiff has stated she never read was irrelevant. We find it somewhat surprising that plaintiffs now take the position that they are entitled to a new trial because evidence they wanted shown to the jury during the trial may have come to the jury's attention through other means.

### Testimony on absence of other accidents

■ Plaintiff argues that the court erred in allowing testimony on the absence of other, reported accidents involving Vermont Castings wood-burning stoves. A proper foundation was led for the admission of that evidence. Janet Zedick, Vermont Castings' warranty manager testified that operators take telephone calls from customers and would, as a matter of course, note and report incidents involving use of the stove which caused an injury to people or property. Evidence of the absence of reports of prior incidents involving the product is admissible when a proper foundation is laid, as it was here. *Spino v. Tilley Ladder,* 448 Pa.Super. 327, 671 A.2d 726, 734–735 (1996).

### Notes of Dean Seidel

Plaintiff argues that the court erred in allowing reference to information contained in handwritten notes of Millville Fire Chief Dean Seidel. Chief Seidel's notes consist of a single page bearing his observations the day of the accident. By the time he arrived, medical personnel were already on the scene treating Wilson's injuries. Chief Seidel did not attempt to obtain a statement from her, but talked to others present to assess what had occurred. Pursuant to his conversations with third parties, he made the following notations:

Ann Wilson

Burn victim

Putting wood in stove and caught clothes on fire

*Panicked* called Home alone.

(Emphasis original.)

■ In response to plaintiffs' motion in limine, we ruled that the notes did not qualify for admission under an exception to the hearsay rule, because Chief Seidel did not get his information from the plaintiff or from any firsthand source.

■ At trial, the contents of Chief Seidel's notes came up while plaintiffs' human factors expert, Harry L. Snyder, was testify-

ing. Dr. Snyder testified that he originally considered, then discounted the notes in forming his opinions on the case. Experts are permitted to rely on hearsay and other otherwise inadmissible evidence in formulating their opinions on the case, Fed.R.Evid. 703, so the reference to the notes was not improper. Further, the court gave the jury a cautionary instruction to disregard the content of Chief Seidel's notes in considering the case.

### Evidence of plaintiff's conduct bearing on the issue of causation

■ Plaintiffs argue that the court improperly allowed evidence on Anne Wilson's conduct relating to the accident. The conduct of the injured party is admissible in a products liability action to the extent it goes to the issue of causation. The jury is required to decide whether the alleged product defect was a "substantial factor" in causing injury to the plaintiff. In so doing, they need to know what conduct by the plaintiff and others led up to the accident for the purpose of deciding whether the product defect caused the injury. The jury cannot decide the issue of causation in a vacuum.

■ Far from trying to keep evidence of plaintiff's conduct out of the case during trial, it was plaintiff herself who testified at considerable length about the events leading up to her accident. Plaintiff described exactly what she did in great detail on direct examination during her case in chief. Thus, she herself introduced the evidence of what transpired prior to the accident. Defendants were certainly entitled to counter her testimony through cross-examination and evidence of their own refuting plaintiff's version of events. The introduction of such evidence is inevitable. The jury cannot decide the case without hearing what events led up to plaintiff's injury.

It is the characterization of plaintiff's conduct as "negligent" which is improper in a products liability case, and contrary to plaintiffs' arguments, that did not occur here. Plaintiff was not characterized to the jury as having been "negligent" or having "misused" the stove.

Further, the jury was given a proper limiting instruction in which they were told that plaintiffs' conduct could be considered only for the purpose of deciding the causation issue. Nor did defendants' counsel improperly argue to the jury that plaintiffs' conduct should be considered in finding her negligent and barring her recovery.

Contrary to plaintiffs' contention, defendants' counsel was not improperly permitted to argue to the jury that Anne Wilson "caused" the accident. Indeed counsel was permitted to argue the issue of causation, because it is entirely proper to do so in a product liability case.

■ The law does not entitle plaintiff to a verdict in his or her favor solely because the product was defective. It entitles the plaintiff to recover only if that defect was a substantial factor in causing the injury. It is entirely proper for defendants' counsel to try to persuade the jury that other factors, be it the conduct of the plaintiff or some other party or factor, not the alleged product defect, were the exclusive causes of the injury.

We take our cue on the admissibility of conduct evidence from the Third Circuit's holding in *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430 (3d Cir.1992). The majority opinion in *Dillinger* was written by Judge Greenberg. Judge Greenberg dissented from the more recent Third Circuit panel decision in *Parks v. AlliedSignal, Inc.*, 113 F.3d 1327, 1341–45 (3d Cir.1997) to voice his disagreement with what he viewed as the majority's departure from the line of Pennsylvania appellate cases ruling conduct evidence admissible for the purpose of establishing or disproving causation. Judge Greenberg stated:

> I agree with much of the majority's analysis of Pennsylvania law, including its discussion of the Pennsylvania Supreme Court's strong resistance to the inclusion of comparative fault principles in strict liability actions. I emphasize, however, that the Pennsylvania courts have been equally strong in maintaining the requirement that the plaintiff in a strict liability action bear the burden of showing both that the product was defective and that the defect proximately caused the injuries in question. . . .

Thus, evidence of the plaintiff's or a third party's conduct, whether negligent or not, is admissible to rebut the allegation that a defect actually caused the injury. Nevertheless, the Pennsylvania Supreme Court has held that a plaintiff's or third party's conduct does not relieve the defendant of liability for a defect which was a substantial factor in bringing about the accident unless the conduct constituted a superseding or intervening cause of the injury. Thus, the defendant is liable as long as the defect was "a substantial factor in bringing about the harm." . . . of course, for a superseding cause to relieve a defendant whose conduct has been determined to be a substantial factor in causing the harm, it must be "so extraordinary as not to have been reasonably foreseeable." . . . [O]rdinary negligence will not do. The majority recognizes this point [in stating that:] . . . "[T]he plaintiff must show that: (1) a product defect (2) caused a harm (3) while the product was being used in a foreseeable manner." . . . "If foreseeable, the jury must find for the plaintiff unless it finds that the defect did not play even a substantial, or more than negligible, role in causing the plaintiff's injury."

Plainly, then, there is a distinction between a plaintiff's conduct which, rather than the defective product, was the cause of the injury and a plaintiff's conduct that was so extraordinary and unforeseeable that it was a superseding cause of the injury. Yet, if the injury is attributable to a plaintiff's conduct of either character, i.e., conduct that was the cause of the injury or unforeseeable superseding conduct, the defendant will not be liable even if its product was defective.

*Id.* at 1341 (Greenberg, dissenting)

Judge Greenberg cited the Pennsylvania Superior Court decision in *Bascelli v. Randy,* 339 Pa.Super. 254, 488 A.2d 1110 (1985) and in *Gallagher v. Ing,* 367 Pa.Super. 346, 532 A.2d 1179 (1987), as illustrative of the "use of a plaintiff's conduct to demonstrate that the injury cannot be attributed to a defective product." *Id.* at 1342. Judge Greenberg also relied on the prior Third Circuit panel decision in *Dillinger,* stating:

. . . In *Dillinger,* we refused to allow evidence of the plaintiff's contributory negligence because the evidence could show only that he failed to prevent an accident resulting from a sequence of events set into motion by a defect in the product . . . although in *Dillinger* we characterized the trend in the Pennsylvania Superior Court increasingly to inject negligence principles into strict liability actions as inconsistent with the rulings of the Pennsylvania Supreme Court, we drew a clear distinction between evidence of conduct which caused an accident independently of the defect in the product and evidence of conduct which exacerbated or failed to prevent an injury caused by the defect. We explicitly held only the latter type of evidence inadmissible . . . .

A reading of *Dillinger* which requires the exclusion of all evidence of foreseeable conduct by the plaintiff relating to causation would violate the clear requirement of the Pennsylvania Supreme Court that a plaintiff in a strict liability action must prove that the defect in the product caused the injuries . . . .

It seems to me that the majority erroneously reads *Dillinger* to require the exclusion of all evidence of foreseeable conduct of a plaintiff relating to causation, for it indicates that the jury instruction was "fatally erroneous [because] it failed to require the jury to analyze whether Mr. Parks' actions were unforeseeable or extraordinary." . . . The result the majority reaches does not take into account the distinction in Pennsylvania law between treatment of a plaintiff's negligence which is the sole cause of the injury and a plaintiff's negligence which combines with a defect in the product to cause the injury. Negligence of the second kind could defeat the claim only if so extraordinary as to be unforeseeable.

*Id.* at 1342.

Under Third Circuit Internal Operating Procedure (IOP), *Dillinger,* not the more recent panel decision in *Parks,* is controlling. IOP 9.1 provides:

It is the tradition of this court that the holding of a panel in a reported opinion is

binding on subsequent panels. Thus, no subsequent panel overrules the holding in a published opinion of a previous panel. Court in banc consideration is required to do so.

Since *Dillinger* is controlling, we look to it and to Judge Greenberg's analysis of its holding, not to the majority opinion in *Parks,* for guidance. Under Judge Greenberg's analysis of *Dillinger,* it is clear that allowing testimony on plaintiff's conduct prior to the accident was proper.

■ The jury was also properly instructed on the limited purpose for which such testimony could be considered. The court charged the jury:

> In determining whether the Vermont Castings stove was defective in design or for lack of warnings, you may not consider the conduct of Anne Wilson or Oliver Larmi on that issue. Either the Defiant stove had a defect or it did not. On the other hand, you may consider evidence of the actions of Anne Wilson, along with all the other evidence in the case, in determining whether any such defect in the stove was a substantial factor in causing the accident. . . .

Plaintiff did not object to any portion of the charge. Counsel was specifically asked at the conclusion of the charge whether they had "any objection to the charge or any proposed addition or changes, [or] deletions?" Plaintiff counsel replied, in response to this question:

> MR. GOLDSTEIN: Judge, just one quick question.
>
> . . . .
>
> MR. GOLDSTEIN: I'm not sure whether it's clear or not to them that they don't have to find both design defect and lack of warning in order to find defect.

The court then made a clarification on that point. Plaintiff's failure to object to the court's instructions on the issue of causation operates as a waiver.

Further, the court's instructions to the jury as to the purpose for which conduct evidence could be considered was entirely consistent with the Third Circuit's holding in *Dillinger,* and with the Pennsylvania appellate opinions upon which that decision is based.

We, will, therefore, deny the request for a new trial on the grounds that either the jury instructions on causation or the existence or a defect or the admission of evidence of plaintiff Anne Wilson's conduct just prior to and in conjunction with the accident were improper.

### References to plaintiffs' education

■ Plaintiffs object to what they characterize as impermissible "repeated" references to Anne Wilson's educational background. Wilson has a Ph.D. in sociology. There were no improper references to Anne Wilson's background or education. Nor was her background ever used in an improper manner by defendants' counsel.

■ Plaintiffs themselves introduced the fact that Wilson is a professor. Information about a party's or a witnesses' background, job and education is certainly appropriate and admissible in every action. Juries cannot make assessments of credibility in a vacuum. Such information gives background on the witness and a point of reference in assessing that individual's credibility, conduct, etc. It was in no way used improperly in this trial.

Further, the court's instructions to the jury included directions to consider all parties equal before the law. The court instructed the jury that:

> In this case the Plaintiffs are individual persons and the Defendant is a corporation. However, in the eyes of the law, all persons who appear before the Court are to be treated equally. . . . Everyone stands alike as equals under the law. And therefore, the case should be considered and decided by you as an action between persons of equal standing in the community, equal worth, and holding the same or similar stations in life. The law is no respecter of persons. All persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.

For all of these reasons, plaintiffs are not entitled to the relief which they seek.